UNITED STATES of America,
Plaintiff–Appellee,

v.

Moses CORONA–SANCHEZ, a/k/a
Enrique Sanchez–Corona,
Defendant–Appellant.

No. 98–50452.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 11, 2001.

Filed June 6, 2002.

Wendy S. Gerboth, Hulett Harper LLP, San Diego, CA, for the defendant-appellant.

Patrick K. O'Toole, United States Attorney, Roger W. Haines, Jr., Assistant United States Attorney, U.S. Attorney's Office, San Diego, CA, for the plaintiff-appellee.

Before: SCHROEDER, Chief Judge, REINHARDT, KOZINSKI, RYMER, T.G. NELSON, KLEINFELD, THOMAS, McKEOWN, W. FLETCHER, FISHER, and BERZON, Circuit Judges.

Opinion by Judge THOMAS; Partial Concurrence and Partial Dissent by Judge RYMER; Dissent by Judge KOZINSKI.

THOMAS, Circuit Judge.

This appeal presents the question of whether a California state conviction for the petty theft of cigarettes and beer constitutes an aggravated felony under 8 U.S.C. § 1101(a)(43)(G) and therefore justifies increasing a sentence for unlawful reentry pursuant to 8 U.S.C. § 1326(b)(2). Under the circumstances of this case, we conclude that it does not, and reverse and remand for resentencing.

## I

Moses Corona–Sanchez was born in Guadalajara, Mexico and lived there until 1987 or 1988, when, at the age of 13, he came to the United States to live with his aunt. He attended junior high and high school in San Clemente, California. His exposure to law enforcement began in 1993, when he was charged with being a minor in possession of alcohol. Since that time, he has been convicted of various offenses, deported 16 times, and excluded twice.

Relevant to the case at hand, Corona–Sanchez was apprehended in 1994 while attempting to spirit away a 12–pack of beer and a pack of cigarettes from a grocery store.[1] This was a reprise of his previous unsuccessful petty larceny of a liquor store, so he was sentenced for petty theft with a prior conviction.

In 1997, Corona–Sanchez pled guilty to the instant charge: being a deported alien found in the United States in violation of 8 U.S.C. § 1326(a). Because the district court deemed the 1994 petty theft conviction to be an aggravated felony, it increased Corona–Sanchez's base offense level from 8 to 24 pursuant to United States Sentencing Guideline § 2L1.2(b)(1)(A).[2] After subtracting 3 lev-

---

1. No documents from this conviction are a part of the record in this case, as is discussed more fully later, but Corona–Sanchez's attorney in the present case explained to the district court that these are the facts of the prior conviction according to Corona–Sanchez's recollection. The government does not dispute this account.

2. The district court used the 1997 version of the guidelines manual. As relevant here, the current version of the guidelines does not differ.

els for acceptance of responsibility and determining that Corona–Sanchez's criminal history category is VI, the court then committed Corona–Sanchez to the custody of the Bureau of Prisons for 77 months. From this sentence, he appeals. We reconsider the case en banc.

## II

We adopt the portion of the panel opinion in this case that addresses an error in the indictment under which Corona–Sanchez was charged. *See United States v. Corona–Sanchez*, 234 F.3d 449, 451 (9th Cir.2000) [hereinafter *Corona–Sanchez I* ]. For ease of reference, we reprint the relevant portion of the panel opinion in full here:

As an initial matter, we note that in February 1998, Corona–Sanchez pled guilty to a one-count indictment which charged him with a violation of both 8 U.S.C. [§ ]1326(a) (being an alien found in the United States after deportation) and 8 U.S.C. § 1326(b)(2) (reentry after deportation and the commission of an aggravated felony). At that time, we considered § 1326(b)(2) to be a separate offense. *See United States v. Gonzalez–Medina*, 976 F.2d 570, 572 (9th Cir. 1992). Shortly after Corona–Sanchez's plea, the Supreme Court held that the fact of a prior aggravated felony conviction is not an element of the offense, but a sentencing factor to be applied by the court. *See Almendarez–Torres v. United States*, 523 U.S. 224, 226, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998).

We recently confronted this precise factual situation in *United States v. Rivera–Sanchez*, 222 F.3d 1057, 1061–62 (9th Cir.2000). There we held that where an indictment charges a defendant with a violation of both § 1326(a) and § 1326(b)(2) in the same count, and the judgment reflects conviction under both provisions, "the proper procedure under these circumstances is to direct the district court to enter a corrected judgment striking the reference to § 1326(b)(2) so that the judgment will unambiguously reflect that the defendant was convicted of only one punishable offense pursuant to § 1326(a)." *Id.; see also United States v. Herrera–Blanco*, 232 F.3d 715 (9th Cir.2000) (*sua sponte* remanding to the district court with directions to correct the judgment of conviction to exclude a reference to 8 U.S.C. § 1326(b)(2)). We shall do so here. We are left with Corona–Sanchez's challenge to his sentence. *Id.*

## III

The primary question on this appeal is whether Corona–Sanchez's prior conviction qualifies as an aggravated felony for federal sentencing purposes. In making this determination, we return to the familiar analytical model constructed by the Supreme Court in *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). Under *Taylor*, federal courts do not examine the facts underlying the prior offense, but "look only to the fact of conviction and the statutory definition of the prior offense." *Id.* at 602, 110 S.Ct. 2143. If the statute criminalizes conduct that would not constitute an aggravated felony under federal sentencing law, then the conviction may not be used for sentence enhancement unless the record includes " 'documentation or judicially noticeable facts that clearly establish that the conviction is a predicate conviction for enhancement purposes.' " *United States v. Rivera–Sanchez*, 247 F.3d 905, 908 (9th Cir.2001) (en banc) (quoting *United States v. Casarez–Bravo*, 181 F.3d 1074, 1077 (9th Cir.1999)). " '[I]f the statute and the judicially noticeable facts would allow the defendant to be convicted of an offense other than that defined as a qualifying offense by the guidelines, then the conviction does

not qualify as a predicate offense.'" *Id.* (quoting *Casarez–Bravo,* 181 F.3d at 1077).

## A

Corona–Sanchez's prior conviction is considered an aggravated felony for federal sentencing purposes if it is a "theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment[is] at least one year." 8 U.S.C. § 1101(a)(43)(G).[3] As with many other subsections in the same statute, Congress did not define the term "theft offense." Thus, under *Taylor,* our first task is to construe and define the meaning of this phrase.

In construing other subsections of the same statute in the past, we have employed two methodologies, depending on the nature of the described offense. *United States v. Trinidad–Aquino,* 259 F.3d 1140, 1143 (9th Cir.2001). If the qualifying offense is described in terms of a traditional common law crime, then we have defined the offense in terms of its generic, core meaning. *Id.* at 1144; *see also Ye v. INS,* 214 F.3d 1128, 1131–32 (9th Cir.2000) (construing "burglary offense"). This approach is consistent with the principles of construction that the Supreme Court has long employed for federal criminal statutes. *See, e.g., Neder v. United States,* 527 U.S. 1, 21, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) ("[W]here Congress uses terms that have accumulated settled meaning under the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.") (internal quotation marks and modifications omitted).

If, on the other hand, the qualifying offense is described in terms that do not embrace a traditional common law crime, we have "employed the ordinary, contemporary, and common meaning" of the statutory words. *Trinidad–Aquino,* 259 F.3d at 1143; *see also United States v. Baron–Medina,* 187 F.3d 1144, 1146 (9th Cir.1999) (construing "sexual abuse of a minor").

In this instance, our choice of methodology is clear because "[t]he contemporary crime of 'theft' stems from the common law crime of larceny." *Corona–Sanchez I,* 234 F.3d at 454 (citing 2 Wayne R. La-Fave, *Criminal Law,* § 8.1 (3d ed.2000)). Indeed, Blackstone describes the offense as "larceny or theft." 4 William Blackstone, *Commentaries on the Law of England* 229 (Univ. of Chicago ed.1979).

■ Initially, common law larceny was confined to a "trespassory taking," or one in which the thief "took and carried away" personal property that was in the owner's possession. *Bell v. United States,* 462 U.S. 356, 358, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). "The elements of common law larceny are (1) a wrongful taking and carrying away (asportation), (2) of the personal property of another, (3) with the fraudulent intent to deprive the owner of his property without his consent." *United States v. Thordarson,* 646 F.2d 1323, 1335 n. 22 (9th Cir.1981) (citing *United States v. Barlow,* 470 F.2d 1245, 1251 (D.C.Cir. 1972)); *see also* 4 Blackstone, *supra,* at 229–33. As it evolved, the common law definition expanded "to include cases where the owner merely was deemed to be in possession." *Bell,* 462 U.S. at 359, 103 S.Ct. 2398. However, "[b]y the late 18th century, courts were less willing to expand common-law definitions." *Id.* Thus, criminal statutes "such as embezzlement and obtaining property by false pretenses" were enacted to "fill this gap." *Id.* At present, "[m]ost modern codes have abolished the separate crimes of larceny, em-

---

**3.** This circuit, along with all others to consider the problem, has held that the verb "is" is missing from the statute and should be read

into it. *See Alberto–Gonzalez v. INS,* 215 F.3d 906, 909 n. 6 (9th Cir.2000).

bezzlement, and false pretenses in favor of the comprehensive crime of 'theft.'" *Corona–Sanchez I*, 234 F.3d at 454 (citing 2 LaFave, *supra*, §§ 8.2 n. 1, 8.8).

Corona–Sanchez argues that we ought to limit the concept of "theft offense" to its common law definition in our formulation of a core, generic concept of the term. Although the common law definition informs us and is the starting point of our analysis, it is not the end point. Indeed, such an approach was rejected by the Supreme Court in *Taylor*, 495 U.S. at 592–96, 110 S.Ct. 2143 (holding that "burglary" should not be limited to its common law meaning, given the statutory history).

*Taylor* also precludes the use of the specific definition used by the state of conviction. *Id.* at 590–91, 110 S.Ct. 2143. Rather, *Taylor* instructs that when Congress described predicate offenses, it meant to incorporate "the generic sense in which the term is now used in the criminal codes of most States." *Id.* at 598, 110 S.Ct. 2143. This guidance is particularly apt in the present context, because Congress used the words "theft offense" rather than just "theft," thus indicating that the phrase ought be read to incorporate different but closely related constructions in modern state statutes.

After undertaking an examination, pursuant to *Taylor*, of existing approaches, the Seventh Circuit concluded that the "modern, generic definition" of the phrase "theft offense (including receipt of stolen property)" is:

> a taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent.

*Hernandez–Mancilla v. INS*, 246 F.3d 1002, 1009 (7th Cir.2001). This definition has also been adopted by the Tenth Circuit. *United States v. Vasquez–Flores*, 265 F.3d 1122, 1125 (10th Cir.2001).

Prior to issuance of *Hernandez–Mancilla*, the panel in this case adopted the definition of theft as contained in the Model Penal Code ("MPC") §§ 223.2–223.9. *Corona–Sanchez I*, 234 F.3d at 454–55. Although use of the MPC is certainly a plausible approach, adoption of the standard established by the two other circuits that have construed the phrase makes more sense in a national context. In addition, the Seventh Circuit's definition is closer to "the generic sense in which the term is now used in the criminal codes of most States," *Taylor*, 495 U.S. at 598, 110 S.Ct. 2143, than is the MPC's. Although common law larceny has been consolidated with other previously distinct crimes in most states, "[o]rdinarily ... the substantive elements of the offenses have not changed." 3 Charles E. Torcia, *Wharton's Criminal Law* § 382 (15th ed.1995). In contrast, "[t]he Model Penal Code provides for an ambitious plan of consolidation of smaller separate crimes into one larger crime called 'theft.'" 2 LaFave, *supra*, § 8.8.

The Seventh Circuit's analysis is persuasive. It is also closer to the "generic sense" of the crime, as envisioned by the Supreme Court. We are also mindful of the desirability of a uniform, national definition. *Taylor*, 495 U.S. at 590–92, 110 S.Ct. 2143. Thus, we adopt the Seventh Circuit's construction.

### B

Having joined the Seventh and Tenth Circuits in their construction of "theft offense," we next must determine whether the state statute that formed the basis of the sentence enhancement qualifies as a theft offense. To accomplish this, we obviously must identify the statute upon which the predicate conviction was based. *Cf. United States v. Potter*, 895 F.2d 1231,

1238 (9th Cir.1990) (holding that in order to count a prior conviction as a predicate violent felony under 18 U.S.C. § 924(e), "the sentencing court and the appellate court [must] be certain of the specific statutory sections under which the defendant previously was convicted"). Otherwise, it is impossible to determine the statutory definition of the prior offense. *See id.; see also Taylor*, 495 U.S. at 602, 110 S.Ct. 2143. Normally, this would not be an operose task. Unfortunately, the record in this case is not particularly pellucid on this point. All the known information about the conviction comes from the rendition of criminal history contained in the presentence report prepared for Corona–Sanchez's sentencing in this case. This report indicates that the probation officer gathered information from local law enforcement agencies and courts as well as the FBI, CII, and DMV information systems. No other court documents—or any other evidence for that matter—were presented to the district court concerning the offense.

The presentence report describes the qualifying offense as "666/488 PC, Petty Theft with Prior Jail Term for a Specific Offense." However, neither § 666 nor § 488 of the California Penal Code describes crimes. Section 488 simply states: "Theft in other cases is petty theft." Section 666 is a pure sentencing statute, which provides:

Every person who, having been convicted of petty theft, grand theft, auto theft under Section 10851 of the Vehicle Code, burglary, carjacking, robbery, or a felony violation of Section 496 and having served a term therefor in any penal institution or having been imprisoned therein as a condition of probation for that offense, is subsequently convicted of petty theft, then the person convicted of that subsequent offense is punishable by imprisonment in the county jail not exceeding one year, or in the state prison.[4]

*See People v. Bouzas*, 53 Cal.3d 467, 279 Cal.Rptr. 847, 807 P.2d 1076, 1084 (1991) ("[T]he legislature has long intended that section 666 establishes a penalty, not a substantive 'offense.'"). Thus, by their plain language neither statute cited in the presentence report, and relied upon by the district court, even comes close to approximating the generic, core elements of a § 1101(a)(43)(G) "theft offense" pursuant to *Hernandez–Mancilla*.[5]

Assuming that Corona–Sanchez was, in fact, convicted of "Petty Theft with Prior Jail Term for a Specific Offense," as stated in the presentence report, that conviction would necessarily have been founded on California Penal Code § 484(a), which is the general California theft statute. There is no other statute that is applicable to the described crime, and the structure of the California theft provisions compels that conclusion. Section 484(a)[6] defines

---

**4.** The version of this statute in effect in 1994 when Corona–Sanchez committed the crime at issue used the spelling "petit" rather than "petty" but is otherwise the same.

**5.** Thus, contrary to the dissent's argument, the presentence report does not recite the statute "of conviction." It only recites statutes setting forth a sentencing scheme, from which the statute of conviction can be inferred.

**6.** In 1994, when Corona–Sanchez committed the crime at issue, all other subsections of

§ 484 discussed fact patterns that would lead to a presumption of intent to commit theft by fraud. *See* Cal.Penal Code § 484(b)-(e) (West Suppl.1994). In addition, the Penal Code then also defined as theft giving false information about the ownership of an item when selling it to a pawnbroker. *Id.* § 484.1. Section 485 criminalized appropriating lost property with knowledge or means of inquiry of the identity of the true owner. Thus, the other Penal Code sections dealing with theft are plainly not applicable to Corona–Sanchez's crime.

theft in general. Sections 486 through 488 divide theft into categories. Section 486 states, "Theft is divided into two degrees, the first of which is termed grand theft; the second, petty theft." Section 487 then describes certain circumstances in which theft will constitute grand theft, such as when the value of the stolen item exceeds $400. Section 488 explains that "[t]heft in other cases is petty theft."

Sections 490 and 666 of the Penal Code govern the sentencing of petty thefts. Section 490 provides, "Petty theft is punishable by fine not exceeding one thousand dollars ($1,000), or by imprisonment in the county jail not exceeding six months, or both." Section 666, as we have discussed, permits the imposition of a higher sentence if the defendant was previously convicted of a theft.

Thus, to meet the presentence report's description of "Petty Theft with Prior Jail Term for a Specific Offense," Corona–Sanchez would had to have been convicted of general theft under § 484(a), with the offense categorized as a petty theft under § 488, with the sentence enhanced under § 666.

 The general California theft statute, § 484(a), provides:

> Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft. In determining the value of property obtained, for the purposes of this section, the reasonable and fair market value shall be the test, and in determining the value of services received the contract price shall be the test. If there be no contract price, the reasonable and going wage for the service rendered shall govern. For the purposes of this section, any false or fraudulent representation or pretense made shall be treated as continuing, so as to cover any money, property or service received as a result thereof, and the complaint, information or indictment may charge that the crime was committed on any date during the particular period in question. The hiring of any additional employee or employees without advising each of them of every labor claim due and unpaid and every judgment that the employer has been unable to meet shall be prima facie evidence of intent to defraud.[7]

The language of the California theft statute is unique among the states. It is not derived from the Model Penal Code. The language of § 484(a) has remained unchanged since its adoption in 1927. *See* 1927 Cal. Stat. 619, § 1. In comparing the *Hernandez–Mancilla* definition of "theft offense" with § 484(a), it becomes apparent that § 484(a) is broader than the generically defined offense. Significantly, it allows a conviction for theft when the defendant has neither taken, nor exercised control over, the property. *See, e.g., People v. Coffelt*, 140 Cal.App. 444, 35 P.2d 374, 376 (1934). A defendant can be convicted of the substantive offense of violation of § 484 for aiding and abetting a theft, even if that theory is not specifically

---

7. The version of this statute in effect in 1994 when Corona–Sanchez committed the crime at issue did not contain the gender-inclusive "or her" references but is otherwise the same.

charged. *See* Cal.Penal Code §§ 31, 971; *People v. Rose,* 56 Cal.App.4th 990, 992, 65 Cal.Rptr.2d 887 (1997); *People v. Guzman,* 45 Cal.App.4th 1023, 53 Cal.Rptr.2d 67, 69 (1996); *see also* 18 Cal. Jur.3d (Rev), *Criminal Law* § 1132 (1985). Under California law, aiding and abetting liability is quite broad, extending even to promotion and instigation. *See People v. Beeman,* 35 Cal.3d 547, 199 Cal.Rptr. 60, 674 P.2d 1318, 1325–26 (1984). Thus, it would not be apparent from reference to the statute of conviction alone to discern whether or not the criminal act was embraced within the federal sentencing definition. Therefore, a conviction under § 484(a) cannot serve as a qualifying offense. *See Rivera–Sanchez,* 247 F.3d at 909.

Further, there are offenses that are included in § 484(a) that are not included in the generic definition. For example, § 484(a) criminalizes theft of labor and solicitation of false credit reporting. Not only is the theft of labor not a part of the *Hernandez–Mancilla* definition, but it generally has not been included within the scope of ordinary theft statutes because one's labor is not one's "property." MPC § 223.7, cmt. 1. It may be that many states have now enacted separate theft-of-services provisions, but that fact does not mean that most states consider labor or services to be "property." In fact, it suggests the contrary is true: if labor were property, there would be no need for separate provisions criminalizing the theft of labor or services. In addition, the Supreme Court has carefully maintained the distinction between "property" and other rights when construing criminal statutes. *See, e.g., McNally v. United States,* 483 U.S. 350, 356, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), *superseded on other grounds by statute as recognized in Cleveland v. United States,* 531 U.S. 12, 19–20, 121 S.Ct. 365, 148 L.Ed.2d 221 (2000).

It is also significant that the sentence enhancement in this case was not sought purely on the basis of a petty theft conviction under § 484(a). Rather, the qualifying conviction is described as "Petty Theft with Prior Jail Term for a Specific Offense." However, the inclusion of a prior theft conviction—whether or not it is treated as a substantive element of the crime—does not narrow the broad scope of § 484(a) in a way that conforms it to the generic, *Hernandez–Mancilla* definition.

Thus, neither a first-time conviction for theft under § 484(a), nor a conviction for "Petty Theft with a Prior Jail Term for a Specific Offense," facially qualifies as an aggravated felony under 8 U.S.C. § 1101(a)(43)(G) because the state statutes at issue criminalize conduct that would not constitute a theft offense under federal sentencing law.

### C

A conviction under § 484(a) for petty theft also does not facially qualify as an aggravated felony for federal sentencing purposes under *Taylor* because it is not a theft offense "for which the term of imprisonment [is] at least one year" as required by 8 U.S.C. § 1101(a)(43)(G). Under California law, the maximum possible sentence for petty theft is six months. *See* Cal.Penal Code § 490. Thus, on its face, a conviction for petty theft under California Penal Code §§ 484(a) and 488 does not qualify as an aggravated felony under federal sentencing law.

However, Corona–Sanchez actually received a two-year sentence for the crime due to the application of California Penal Code § 666, which provides a sentence enhancement for recidivists. Thus, the government argues, his conviction qualifies for treatment as an aggravated felony. However, *Taylor* requires us to examine the prior crimes by considering the statutory definition of the crimes categorically,

without reference "to the particular facts underlying those convictions." 495 U.S. at 600, 110 S.Ct. 2143. Thus, under the categorical approach, we must consider the sentence available for the crime itself, without considering separate recidivist sentencing enhancements.

This approach is consistent with the Supreme Court's historic separation of recidivism and substantive crimes. As the Court bluntly put it, "recidivism does not relate to the commission of the offense." *Apprendi v. New Jersey,* 530 U.S. 466, 488, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (internal quotation marks and citation omitted); *see also Almendarez–Torres v. United States,* 523 U.S. 224, 230, 239–47, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) (concluding that a penalty provision that authorizes a court to increase the sentence for a recidivist does not define a separate crime). Following this lead, we have drawn a similar distinction between substantive offenses and recidivist sentencing enhancement statutes. *See Montiel–Barraza v. INS,* 275 F.3d 1178, 1180 (9th Cir.2002) (holding that California Vehicle Code § 23175, now numbered 23550, which functions similarly to Penal Code § 666 but in the context of successive convictions for driving under the influence of alcohol, "is an enhancement statute; it does not alter the elements of the underlying offense"). California draws the same distinction for §§ 484 and 666. *See Bouzas,* 279 Cal.Rptr. 847, 807 P.2d at 1080 (approving of cases holding that under § 666, the prior "is a sentencing factor for the court and not a matter for the jury to consider in relation to the present offense on which the defendant is being tried").

The Sentencing Guidelines take a similar approach, describing felonies with reference to the offense, rather than separate sentencing enhancements. When Corona–Sanchez was sentenced, application note 1 to United States Sentencing Guideline § 2L1.2, the guideline at issue here, stated in part: " 'Felony offense' means any federal, state, or local offense punishable by imprisonment for a term exceeding one year." U.S.S.G. § 2L1.2 application note 1 (1997). This construction is also in accord with Congress's historical distinction between the crimes it chooses to categorize as felonies and those it designates as misdemeanors. *See United States v. Robles–Rodriguez,* 281 F.3d 900, 904 (9th Cir. 2002).

Examining the crime itself, rather than any sentencing enhancements, is also consistent with the legislative history of defining aggravated felonies under 8 U.S.C. § 1101(a)(43). In defining "aggravated felony," Congress was addressing serious crimes. *See* H.R.Rep. No. 104–22, at 5 (1995) ("[These amendments] address the problems of aliens who commit serious crimes while they are in the United States and . . . give Federal law enforcement officials additional means with which to combat organized immigration crime."); *cf. Kofa v. INS,* 60 F.3d 1084, 1090–91 (4th Cir.1995) ("Speaking through the amendment [to 8 U.S.C. § 1253(h)(2) ], Congress tells us that aliens who are convicted of an aggravated felony have committed a particularly serious crime."). The immigration consequences to an alien convicted of an "aggravated felony" are significant.[8] Given the profound consequences of the desig-

---

8. For example, an alien convicted of an aggravated felony is: (1) subject to deportation, 8 U.S.C. § 1227(a)(2)(A)(iii), and presumed deportable, *id.* § 1228(c); (2) ineligible to seek judicial review of a removal order, *id.* § 1252(a)(2)(C); (3) barred from eligibility for asylum, *id.* § 1158(b)(2)(A)(ii), (B)(i); (4) barred from receiving voluntary departure, *id.* § 1229c(a)(1); (5) disqualified from cancellation of removal, *id.* § 1229b(a)(3); and (6) subject to being taken into custody upon release from confinement, regardless of whether the release is on parole or supervised release, *id.* § 1226(c)(1).

nation and the declared purpose of Congress to target "serious crimes," it is doubtful that Congress intended to include crimes such as petty theft within the ambit of the definition by virtue of state sentencing enhancements imposed for acts that themselves are not aggravated felonies.[9]

Therefore, under the categorical approach, we must separate the recidivist enhancement from the underlying offense. The maximum possible sentence for petty theft in violation of California Penal Code §§ 484(a) and 488, considered without reference to § 666, is six months. *See* Cal.Penal Code § 490. Thus, a conviction for petty theft in California is not an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(G).

*Alberto–Gonzalez v. INS,* 215 F.3d 906 (9th Cir.2000), is not to the contrary. In that case, we considered 8 U.S.C. § 1101(a)(43)(G) in the context of a petition for review of a deportation decision. We held that the phrase "for which the term of imprisonment [is] at least one year" in § 1101(a)(43)(G) "refer[s] to the actual sentence imposed by the trial judge." 215 F.3d at 910. However, the question we addressed in *Alberto–Gonzalez* was whether to consider the actual sentence imposed or, as urged by the government in that case, *only* the potential sentence that the judge could have imposed. *Id.* at 909. Under the position the government urged in *Alberto–Gonzalez,* all convictions for crimes with indeterminate sentences would have to be treated as aggravated felonies under federal sentenc-

ing law, even if only a one-day sentence were imposed. The question of a sentence imposed in excess of the stated statutory maximum was not at issue in *Alberto–Gonzalez.* Under the categorical approach, we must first look at the maximum sentence for the crime that conforms to the generic definition. Then, if the maximum sentence is over one year, we look to the actual sentence imposed pursuant to *Alberto–Gonzalez* to see whether it also satisfies the one-year requirement.

It is irrelevant that California defines crimes enhanced and sentenced as felonies under § 666 as, in fact, felonies. *See People v. Stevens,* 48 Cal.App.4th 982, 56 Cal. Rptr.2d 13, 15–16 (1996). Indeed, the parties do not dispute that a crime may be classified as an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(G) without regard to whether, under state law, the crime is *labeled* a felony or a misdemeanor. This rule is an almost-compelled natural outgrowth of *Taylor's* holding that a crime may be a "burglary" regardless of whether the state gives the crime that label. *Taylor,* 495 U.S. at 590–92, 110 S.Ct. 2143. Other circuits have held that it is irrelevant whether the state labels the underlying crime "misdemeanor" or "felony." *See, e.g., United States v. Christopher,* 239 F.3d 1191, 1193 (11th Cir.) (collecting cases), *cert. denied,* —— U.S. ——, 122 S.Ct. 178, 151 L.Ed.2d 123 (2001). We agree with our sister circuits. The relevant question is whether the crime meets the definition of an "aggravated felony" under federal sentencing law.[10]

**9.** The parties have not pointed to any authority suggesting that § 666 is not a unique sentencing scheme or indicating that other states give judges the power to impose either a sentence of up to six months in the county jail or a sentence of up to three years in prison for a petty theft offense. This uniqueness reinforces our conclusion that when it enacted the aggravated felony provisions, Congress did not have in mind a petty theft offense enhanced pursuant to § 666.

**10.** Because of our resolution of this case, we need not decide whether the crime first must be considered a felony under the traditional common law definition or under general provisions of federal law *before* qualifying as an "aggravated felony" under 8 U.S.C.

In this case, the maximum possible sentence for petty theft in violation of California Penal Code §§ 484(a) and 488, considered without reference to California Penal Code § 666, is six months. *See* Cal.Penal Code § 490. Thus, Corona–Sanchez's prior conviction cannot be considered a "theft offense ... for which the term of imprisonment[is] at least one year" under 8 U.S.C. § 1101(a)(43)(G).

### D

■ In sum, considered categorically, California Penal Code § 484(a) is too broad to constitute a "theft offense" in all circumstances. Thus, a conviction under § 484(a) does not facially qualify as an aggravated felony under 8 U.S.C. § 1101(a)(43)(G). Neither, of course, would a conviction under California Penal Code §§ 488 and 666 qualify because those sections do not describe substantive criminal offenses, much less qualify as "generic" theft offenses under federal law. Finally, the statutes at issue do not qualify as aggravated felonies for federal sentencing purposes because the maximum sentence for petty theft without statutory recidivist enhancements is less than one year. For these reasons, Corona–Sanchez's conviction under "666/488" for "Petty Theft with Prior Jail Term for a Specific Offense" does not facially qualify as an aggravated felony under federal sentencing law.

### IV

When the statute of conviction does not facially qualify as an aggravated felony under federal sentencing law, *Taylor* allows "the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of [the generic offense]." 495 U.S. at 602, 110 S.Ct. 2143. To that end, courts may examine the record for "documentation or judicially noticeable facts that clearly establish that the conviction is a predicate conviction for enhancement purposes." *Rivera–Sanchez*, 247 F.3d at 908 (citation and internal quotation marks omitted). We have labeled this the "modified categorical approach." *Ye*, 214 F.3d at 1133. The idea of the modified categorical approach is to determine if the record unequivocally establishes that the defendant was convicted of the generically defined crime, even if the statute defining the crime is overly inclusive. For example, in the case of a jury trial, the charging document and jury instructions from the prior offense may demonstrate that the "jury was actually required to find all the elements" of the generic crime. *Taylor*, 495 U.S. at 602, 110 S.Ct. 2143. Similarly, if a defendant enters a guilty plea, the sentencing court may consider the charging documents in conjunction with the plea agreement, the transcript of a plea proceeding, or the judgment to determine whether the defendant pled guilty to the elements of the generic crime. *See United States v. Bonat*, 106 F.3d 1472, 1476–78 (9th Cir.1997). Charging papers alone are never sufficient. *United States v. Parker*, 5 F.3d 1322, 1327 (9th Cir.1993).[11] However, charging papers may be considered in combination with a signed plea agreement. *United States v. Sweeten*, 933 F.2d 765, 767, 769–70 (9th Cir.1991).

### A

In the present case, none of these documents are part of the record. The only document presented to the district court

§ 1101(a)(43)(G). *Cf. United States v. Pacheco*, 225 F.3d 148, 154–55 (2d Cir.2000).

11. *Taylor* and *Parker* thus foreclose the dissent's suggestion that the modified categorical approach is satisfied merely when "the charging paper sets out all the elements of the generic offense." *See* dissent at 1217.

was the presentence report. When the presentence report identifies the statute of conviction and the defendant does not controvert it, the presentence report is sufficient evidence to establish that the prior conviction was for the statute listed in the report. *United States v. Romero–Rendon*, 220 F.3d 1159, 1162–65 (9th Cir.2000). However, we have not extended this rule from the relevant inquiry under *Taylor's* true categorical approach—i.e., what is the statute of conviction?—to the relevant inquiry under the modified categorical approach—i.e., of what elements was the defendant convicted? Instead, we have held that a presentence report reciting the facts of the crime is insufficient evidence to establish that the defendant pled guilty to the elements of the generic definition of a crime when the statute of conviction is broader than the generic definition. *See United States v. Franklin*, 235 F.3d 1165, 1172 (9th Cir.2000); *see also United States v. Potter*, 895 F.2d 1231, 1237–38 (9th Cir. 1990).

The *Franklin* case is quite similar to the present case. In *Franklin*, the presentence report did not recite the statute of conviction, but, as here, there was no dispute about what the statute of conviction was. 235 F.3d at 1169–70 & n. 4 (noting that Franklin's predicate offenses "were charged pursuant to" California Penal Code § 459; also noting that the charging papers for the predicate offenses were in evidence). The statute of conviction was too broad to meet the generic definition. *Id.* at 1169. Thus, the issue addressed in *Franklin* was identical to the issue we address here: whether there is sufficient evidence to show that the defendant was convicted of the elements of the generic offense when the statute of conviction is too broad. In *Franklin*, as in this case, the presentence report contained a short description of the facts underlying the prior convictions. *Id.* at 1171. Further, unlike this case, the court saw the factual

allegations contained in the charging papers, which had been produced. *Id.* at 1170. The facts as given in the charging papers and the presentence report suggested that the crimes at issue could have fallen within the generic definition. *Id.* However, applying *Taylor*, we held that this evidence was not enough, "uncontested or contested, [to] establish that a jury actually found beyond a reasonable doubt, or that Franklin plead guilty to, all of the requisite facts necessary" to bring the predicate offenses within the applicable generic definition. *Id.* at 1172. This was so because the documents did not allow the court to "know[ ] what a jury actually found or what Franklin actually admitted in a plea." *Id.*

Thus, Corona–Sanchez's presentence report is insufficient evidence because all it does is recite the facts of the crimes as alleged in the charging papers. That it also notes that he "P/G as charged" does not remedy the situation, because it does not indicate the source of this information. It is unclear if this information came from a source that we have previously deemed acceptable, such as a signed plea agreement, a transcript of the plea hearing, or a judgment of conviction, *see Bonat*, 106 F.3d at 1476–78, or merely from one of the electronic criminal history databases consulted by the probation officer who prepared the report. We need not decide in this case whether information contained in a presentence report from an identified, acceptable source can constitute evidence under *Taylor's* modified categorical approach. Such a case is not before us. When the presentence report itself does not contain the information necessary under the modified categorical approach, it cannot constitute sufficient evidence.

In this case, the presentence report alone is not sufficient to establish that Corona–Sanchez was convicted of a quali-

fying offense. It provides only the facts as alleged in the charging documents for the prior conviction, but "the Supreme Court in *Taylor* and this circuit in our precedents have foreclosed any approach that considers the underlying facts of prior convictions to determine whether a defendant was convicted by a jury or pleaded guilty to a predicate offense" for federal sentencing purposes. *Franklin,* 235 F.3d at 1171. Thus, a remand for resentencing would be required for this reason alone.

### B

In this case, the parties have agreed that Corona–Sanchez was convicted under the §§ 484/488/666 scheme. As we have explained, a conviction for petty theft under California Penal Code § 484(a), even under the §§ 484/488/666 scheme, cannot qualify as an aggravated felony under 8 U.S.C. § 1101(a)(43)(G) because the maximum possible sentence for a violation of § 484(a) is six months. Therefore, in this case, even if the relevant documents were to establish the substantive elements of the generic crime, the offense of which Corona–Sanchez was convicted would still not constitute an aggravated felony because it fails to meet the one-year sentence requirement of § 1101(a)(43)(G). However, there may well be other sentencing issues that remain. *See United States v. Matthews,* 278 F.3d 880, 885–86 (9th Cir. 2002) (en banc) (holding that in the normal case, resentencing after remand is open and is not limited to issues or evidence previously presented). This case is remanded to the district court for resentencing consistent with this opinion.

**REVERSED AND REMANDED FOR RESENTENCING.**

RYMER, Circuit Judge, with whom KOZINSKI, T.G. NELSON, and KLEINFELD, Circuit Judges, join, concurring in part[1] and dissenting in part.

To me, stealing property from a grocery store with a prior conviction for doing the same thing—to which Corona–Sanchez pled guilty and for which he was sentenced to two years in custody pursuant to California Penal Code §§ 488 and 666, is plainly a "theft offense ... for which the term of imprisonment is at least one year." 8 U.S.C. § 1101(a)(43)(G). If so, the conviction was for an "aggravated felony" and enhancement of Corona–Sanchez's federal sentence for illegally reentering the United States after being deported was required by U.S.S.G. § 2L1.2(b)(1)(A). This is true regardless of which generic definition of "theft" we adopt. While I do not believe that the full range of conduct proscribed by California's statutory definition of "theft," Cal.Penal Code § 484(a), falls outside the modern, categorical meaning of "theft offense," even if it does, we are not required to play ostrich to the record which reflects that the elements of a theft offense, however defined, exist in this case and that Corona–Sanchez was convicted of a felony. Therefore, I would affirm.

It is undisputed that on January 11, 1994 Corona–Sanchez entered a guilty plea to a California complaint in Orange County Superior Court Case No. 94SF0169 charging that on or about March 14, 1994, he attempted to steal/take and carry away the property of Albertsons Grocery Store. His plea was to petty theft with a prior jail term for a specific offense—again, petty theft—pursuant to California Penal Code §§ 666 and 488. He was sentenced to two years in custody.[2] This information, togeth-

---

1. I concur in Parts I and II of the majority opinion, and in that portion of Part III(C) where we join other circuits in holding that misdemeanors can qualify as an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(G).

2. Section 666 provides that a person convicted of a subsequent offense (having been convicted previously of petit theft) is punishable by imprisonment in the county jail not exceeding one year, or in the state prison. In

er with the fact that Corona–Sanchez had previously been charged with, and pled guilty to, entering Dad's Liquor Store in San Clemente, California, with the intent to commit larceny, is set out in the Presentence Report filed in connection with Corona–Sanchez's sentencing in this case. He objected to the enhancement recommended by the PSR on the basis that the prior conviction relied upon by the probation officer (petty theft with a prior) is not an aggravated felony because it includes theft of services; it includes theft of real property; and it can be punishable by less than one year of imprisonment. But Corona–Sanchez did not object to the PSR's recitation of what the charging document averred, what he pled guilty to, or the statutes of conviction.

U.S.S.G. § 2L1.2(b)(1)(A) mandates enhancement of an alien's sentence for unlawfully reentering the United States when he was previously deported after a conviction for an "aggravated felony." Section 2L1.2(b)(1)(A) relies on 8 U.S.C. § 1101(a)(43) for its definition of "aggravated felony." An "aggravated felony" under § 1101(a)(43)(G) means "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year." Congress failed to say what it meant by "theft offense." In these circumstances, the Supreme Court has indicated that we should craft a definition that is modern, uniform, and categorical, and that does not depend upon the definition adopted by the state of conviction. *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990).

In *Taylor*, the Court had to determine the meaning of "burglary" as the term was used for enhancing sentences under the Career Criminals Amendment Act of 1986 (Subtitle I of the Anti–Drug Abuse Act of 1986), 18 U.S.C. § 924(e). In doing so, the Court recognized that the contemporary understanding of "burglary" has diverged from its common law roots, and it concluded that Congress meant the generic sense in which the term is now used in the criminal codes of most states. Accordingly, the Court settled upon the minimum basic elements of burglary by considering what commentators had to say, the prevailing view in modern codes, and its treatment in the Model Penal Code. *Id.* at 598, 110 S.Ct. 2143.

Corona–Sanchez argues that in the absence of a Congressional definition the courts should turn to the common law, because theft is a common law crime. However, as the majority concludes, *Taylor* makes it clear that common law definitions are not controlling. *Id.* at 598, 110 S.Ct. 2143. Thus, our task is to discern a contemporary, generic definition for "theft offense."

As the panel opinion explains, the same concerns animating *Taylor's* approach are present here. *United States v. Corona–Sanchez (Corona–Sanchez I)*, 234 F.3d 449, 454–55 (9th Cir.2000). Congress expanded the immigration consequences of past criminal conduct when it passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). Further, it used the term "theft offense" in § 1101(a)(43)(G), not just the word "theft." This manifests Congressional intent to paint with a broad brush. *Id.* at 455. Other circuits agree. *See Hernandez–Mancilla v. I.N.S.*, 246 F.3d 1002, 1008 (7th Cir.2001); *United States v. Vasquez–Flores*, 265 F.3d 1122, 1124 (10th Cir.2001).

Given this intent, the panel thought that the definition of "theft offense" should derive from the Model Penal Code (MPC).

turn, Cal.Penal Code § 18 provides that any offense punishable by imprisonment in a state prison is punishable by imprisonment for 16 months, or two or three years.

*Corona–Sanchez I*, 234 F.3d at 454–55. The MPC reflects a common understanding of the crime of "theft" and captures the sentiment of Congress because it employs an expansive definition. The Model Penal Code sets forth eight types of theft offenses, and consolidates the three common law crimes of larceny, embezzlement and false pretenses into "theft." [3]

At the time of the panel opinion in *Corona–Sanchez I*, the Fifth Circuit was the only court of appeals that had considered the question of what "theft offense" in § 1101(a)(43)(G) meant. Without reference to other sources, it used the definition in *Black's Law Dictionary*, which defines "theft" as "the act of stealing." [4] *United States v. Dabeit*, 231 F.3d 979, 983 (5th Cir.2000). The panel believed that the MPC's formulation was preferable to *Black's*, although consistent with it. Since the panel decision was rendered, the Seventh and Tenth Circuits have also had occasion to define "theft offense." In addition to the MPC, they examined *Black's* as well as the approach of the Board of Immigration Appeals (BIA). [5] Both courts agree that " 'Congress signaled that it was not presenting an exhaustive list of offenses (i.e., just theft and receipt); rather with its word choices, Congress indicated that the phrase ought to be given a broad read.' " *Vasquez–Flores*, 265 F.3d at 1124 (quoting with approval *Hernandez–Mancilla*, 246 F.3d at 1008). Having consid-

---

**3.** Under the MPC, "theft" comprises theft by unlawful taking or disposition; theft by deception; theft by extortion; theft of property lost, mislaid, or delivered by mistake; receiving stolen property; theft of services; theft by failure to make required disposition of funds received; and unauthorized use of automobiles and other vehicles. Model Penal Code §§ 223.2–223.9.

**4.** *Black's Law Dictionary* (6th ed.1990) defines "theft" as:

A popular name for larceny. The act of stealing.... The fraudulent taking of personal property belonging to another, from his possession, or from the possession of some person holding the same for him, without his consent, with intent to deprive the owner of the value of the same, and to appropriate it to the use or benefit of the person taking.

It is also said that theft is a wider term than larceny and that it includes swindling and embezzlement and that generally, one who obtains possession of property by lawful means and thereafter appropriates the property to the taker's own use is guilty of a "theft"....

Theft is any of the following acts done with intent to deprive the owner permanently of the possession, use or benefit of his property: (a) Obtaining or exerting unauthorized control over property; or (b) Obtaining by deception control over property; or (c) Obtaining by threat control over property; or (d) Obtaining control over stolen property knowing the property to have been stolen by another.

*Black's Law Dictionary* 1477 (6th ed.1990) (citations omitted). "Larceny" is defined as:

Felonious stealing, taking and carrying, leading, riding, or driving away another's personal property, with intent to convert it or to deprive owner thereof.... The essential elements of a "larceny" are an actual or constructive taking away of the goods or property of another without the consent and against the will of the owner or possessor and with a felonious intent to convert the property to the use of someone other than the owner.

*Id.* at 881 (citations omitted).

**5.** The BIA crafted a definition for "theft offense" by reference to the Model Penal Code, *Black's Law Dictionary,* and federal as well as state statutes in *In re V–Z–S*, Interim Dec. No. 3434, 2000 WL 1058931 (BIA Aug. 1, 2000). It concluded that a taking of property "constitutes a 'theft' whenever there is criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent." Later, in *In re Bahta*, Interim Dec. 3437, 2000 WL 1470462 (BIA Oct. 4, 2000), the BIA construed use of the parenthetical "(including receipt of stolen property)," and held that it was intended to clarify that the term "theft offense" did not require proof that the offender was involved in the actual taking of property.

ered the MPC, *Black's Law Dictionary* and the definition developed by the BIA, both courts held that the "modern, generic, and broad definition of the entire phrase 'theft offense (including receipt of stolen property)' is a taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent." *Hernandez–Mancilla*, 246 F.3d at 1009; *Vasquez–Flores*, 265 F.3d at 1125.

The majority opts for the *Hernandez–Mancilla* test, which has the merit of making the generic definition more uniform. However, I do not agree with its implicit assumption that the *Hernandez–Mancilla* definition is necessarily narrower than the MPC's—or California's statutory definition—of "theft." Certainly nothing in the Seventh Circuit's opinion suggests that it thought so. Rather, it read "theft offense" as an "umbrella label," and came up with a formulation which it thought "distilled [the offense] to its essence" by combining definitions developed by the BIA in *V–Z–S* and *Bahta*—which, in turn, had been crafted from the MPC, *Black's*, and federal as well as state statutes. *Hernandez–Mancilla*, 246 F.3d at 1008.

The majority holds that § 484(a) is broader than the Seventh Circuit's definition because § 484(a) criminalizes theft of services and solicitation of false credit reporting. However, "property" can include services; [6] and it isn't just solicitation of false credit reporting that California penalizes, but the fraudulent obtaining of money

or property, labor or service that is the theft. Neither example causes Corona–Sanchez's conviction to fall outside *Hernandez–Mancilla*. Nor does *People v. Coffelt*, 140 Cal.App. 444, 35 P.2d 374, 376 (1934), indicate that § 484(a) allows a conviction for theft when the defendant has not taken or exercised control over the stolen property; certainly in *Coffelt* itself, the defendant *did* exercise control by directing property taken by false pretenses to a third party. California is no different from any other jurisdiction in recognizing that theft is theft whether the property is taken for someone else or for oneself. Finally, and curiously, the majority suggests that § 484 is broader than its preferred generic definition of theft because a defendant can be convicted of the substantive offense of violation of § 484 for aiding and abetting a theft. It cannot be that the possibility of being liable as an aider or abettor takes an offense out of the running, for this is true of any crime in California, where principals include those who aid or abet the commission of a crime. Cal.Penal Code § 31. In any event, "[t]o be liable as an aider and abettor, the defendant must have instigated or advised the commission of the offense or have been present for the purpose of assisting." 1 Witkin & Epstein, *California Criminal Law* (3d ed.), § 78, p. 124 (2000). This is unremarkable, and well within the bounds of whichever generic formulation is adopted.

But even if § 484(a) were broader, stealing property from a grocery store is a

---

**6.** The majority states that theft of services has generally not been included within the scope of ordinary theft statutes because "services" were not considered to be "property," citing to the MPC commentary to § 223.7. Maj. op. *supra* at 1208. I don't read it this way. The MPC itself *includes* theft of services in § 223.7, and the Commentary does not exclude them. The Commentary indicates that

labor or professional service, though arguably viewed as a species of property, had not been included in the traditional scope of that term in ordinary theft statutes but that since promulgation of the Code in 1962, more than half of the states have enacted theft-of-service provisions. *See* American Law Institute, Modern Penal Code and Commentaries II § 223.7, cmt. 1 (1980).

"theft"—never mind a *"theft offense."* An offense constitutes a "theft offense" for purposes of an aggravated felony enhancement if its statutory definition substantially corresponds to the generic definition *or* the charging paper sets out all the elements of the generic offense. *Taylor,* 495 U.S. at 602, 110 S.Ct. 2143. Here, the PSR recites what Corona–Sanchez was charged with, and what he pled guilty to, and what he was sentenced for—and he contests none of it.

The majority accepts the PSR's identification of the statute of conviction, but nothing more. I do not believe that either *United States v. Franklin,* 235 F.3d 1165, 1172 (9th Cir.2000), or *United States v. Potter,* 895 F.2d 1231, 1237–38 (9th Cir. 1990), constrains us to ignore the PSR's recitation of what the charging document specifically charged in this case. The presentence report in *Potter* simply described the defendant's prior conviction without mentioning the specific statutory section under which he had been convicted; the PSR in *Franklin* described the facts (which the categorical approach precludes a court from resorting to), but not the statute of conviction. Thus, the information in both PSRs was thought unreliable for purposes of enhancing a sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e). But the same is not true here. Both the charge and the statutes of conviction are set out, and were relied upon by the district court, properly I believe, in the absence of any objection calling the accuracy of the account into question.

In these circumstances I do not see how *United States v. Rivera–Sanchez,* 247 F.3d 905 (9th Cir.2001), is implicated. There, the question was whether a conviction under a statute that criminalized conduct we had previously held did not qualify as an aggravated felony (solicitation of drug offenses) could be an aggravated fel-

ony under 8 U.S.C. § 1101(a)(43)(B). We held that the conviction facially does not qualify, because the full range of conduct encompassed by the statute does not constitute an aggravated felony. No such question is raised in this case because we have never held that any part of the California theft statute is not an aggravated felony under § 1101(a)(43)(G), and there is no basis for doing so now no matter which formulation of the generic definition is preferred. Given the charge to which Corona–Sanchez pled guilty, there is no possibility that he was convicted for an act that is not a "theft offense."

Corona–Sanchez also argues that the rule of lenity should cause us to interpret § 1101(a)(43)(G) without consideration of the penalties imposed by state law. Yet this is precisely what § 1101(a)(43)(G) directs us to do. Once it is determined that a theft offense has been committed, the only other condition is that the term of imprisonment be at least one year. In this case, it was two years.

The majority holds that the categorical approach requires us to separate the recidivist enhancement from the underlying offense, leaving a maximum possible sentence for petty theft of six months under Cal.Penal Code § 490. But nothing in *Taylor* suggests that we must do this. Instead, up until now, we—and other circuits as well—have held that the determinative sentence is the *actual sentence imposed.* See, e.g., *Alberto–Gonzalez v. INS,* 215 F.3d 906, 909 (9th Cir.2000); *United States v. Pacheco,* 225 F.3d 148, 154 (2d Cir.2000); *United States v. Graham,* 169 F.3d 787, 790 (3d Cir.1999). The majority's attempt to distinguish *Alberto–Gonzalez* is not persuasive to me. There, we construed 8 U.S.C. § 1101(a)(48)(B), which provides for purposes of IIRIRA that "[a]ny reference to a term of imprisonment or a sentence with respect to an offense is

deemed to include the period of incarceration or confinement ordered by a court of law," as meaning the sentence actually imposed. It is hard to read the word "ordered" any other way, no matter what arguments were made (or not made) in *Alberto–Gonzalez*. In any event, if the statutory maximum is what matters, I do not agree that the relevant maximum is for a single crime of petty theft because that ignores the reality that Corona–Sanchez was a recidivist who pled guilty to petty theft with a prior pursuant to §§ 488 *and* 666. There is no getting around the fact that "[p]etty theft becomes a more serious offense when the defendant was previously convicted of this crime," 2 Witkin & Epstein, *California Criminal Law* (3d ed.), § 7, p. 27, as Corona–Sanchez was here, and § 666—not § 490—prescribes punishment for that offense.

In sum, it is evident to me that a conviction for petty theft with a prior, on charges of stealing beer from a grocery store, for which the sentence imposed was two years, constitutes an "aggravated felony" for purposes of U.S.S.G. § 2L1.2(b)(1)(A). I would affirm.

KOZINSKI, Circuit Judge, dissenting.

I join Judge Rymer's dissent without reservation but write to elaborate on a single point. In section III.C of its opinion, the majority holds that the maximum term of imprisonment for the crime of which Corona–Sanchez was convicted is six months. The longer sentence he received, the majority argues, is based on a sentencing enhancement, which is not an element of the crime of petty theft. The majority relies on *People v. Bouzas*, 53 Cal.3d 467, 279 Cal.Rptr. 847, 807 P.2d 1076, 1080 (1991), which holds that "the prior conviction under ... section 666[is] a sentencing factor for the court, and not ... an 'element' of an offense to be determined by a jury." If *Bouzas* were good law, the majority's argument would be plausible, but it

is not. The procedure approved by the California Supreme Court in *Bouzas* doesn't survive *Apprendi;* the recidivist enhancement is an element of the crime that must be determined by a jury.

Three of the justices in the *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), majority apparently were of the view that the Court's prior opinions in *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), and *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), survived its ruling; the remaining two majority justices suggested strongly that they did not survive. *See Apprendi*, 530 U.S. at 517–18, 120 S.Ct. 2348 (concurrence of Justice Thomas, joined by Justice Scalia). It is, at the very least, doubtful that the distinction our majority purports to draw between the base offense and a sentencing enhancement continues to be valid. But whatever the fate of *Almendarez–Torres* and *McMillan*, there is no doubt that what we have here is not the normal case of a basic crime (petty theft) coupled with a sentencing enhancement (recidivism). Rather, California has created a wholly new crime, petty theft with a prior, all the elements of which must be determined by a jury.

*Almendarez–Torres* and *McMillan* dealt with situations where recidivism had a single effect: It enlarged the term of imprisonment the court could impose. Section 666 is quite different because it does much more than lengthen the potential sentence; it changes the nature of the crime. Petty theft, as defined by section 488 of the California Penal Code, is a misdemeanor. Cal.Penal Code § 490. However, if a defendant has previously been convicted of a qualifying offense, the crime becomes a felony. Cal.Penal Code § 666; *see* Cal.Penal Code § 17 (defining "felony"). Felonies and misdemeanors connote different

levels of culpability and carry very different stigma. As the Court noted in *Apprendi*, cases such as *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), are "concerned as much with the category of substantive offense as 'with the degree of criminal culpability' assessed." 530 U.S. at 494–95, 120 S.Ct. 2348 (quoting *Mullaney*, 421 U.S. at 698, 95 S.Ct. 1881). The Court continued:

> The degree of criminal culpability the legislature chooses to associate with particular, factually distinct conduct has significant implications both for a defendant's very liberty, *and for the heightened stigma associated with an offense the legislature has selected as worthy of greater punishment.*

*Id.* at 495, 120 S.Ct. 2348 (emphasis added).

Raising an offense from a misdemeanor to a felony has effects far beyond the extra time defendant might serve. While employers may be willing to overlook a misdemeanor in potential employees, they are much less likely to hire convicted felons, especially for positions of trust and responsibility. Suffering a felony conviction, rather than a misdemeanor, can also have serious effects on personal relationships and reputation in the community. Moreover, under state law, felons suffer a variety of limitations and disabilities that misdemeanants do not. Misdemeanor sentences are served in local jails, while felony time is spent in state prison. Cal.Penal Code § 12. For the rest of their lives, felons (but not misdemeanants) are denied the right to vote, *see, e.g.*, Cal. Elec.Code § 2212, and the right to bear arms. *See, e.g.*, Cal.Penal Code § 12021.

Raising the level of crime from a misdemeanor to a felony adds such grave consequences for the individual charged with a crime that it seems wholly inconceivable that the element which causes this escalation can be deemed merely a sentencing factor that can be determined by the judge alone. That element—here the fact of prior conviction—is part of the definition of the very offense, and must be determined by a jury. *Bouzas*, decided nine years before *Apprendi*, is no longer good law.

The crime of which Corona–Sanchez was convicted therefore is not, as the majority would have it, petty theft. Rather, it is the distinct crime of theft by one who has previously been convicted of a predicate offense. This is a different, and more serious, crime, one that may be punished by imprisonment in the state prison rather than in a county jail. Moreover, it is clearly a "theft offense" and does not, by virtue of this additional element, fall outside the generic definition of "theft." Nor, as persuasively explained by Judge Rymer, does the California theft statute sweep more broadly than the generic definition, whether one adopts the Model Penal Code definition, the Seventh Circuit's definition or any other rational definition. I would affirm.