[No. B092262. Second Dist., Div. Seven. May 22, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
MIGUEL GUZMAN et al., Defendants and Appellants.

COUNSEL

Gary E. Gibbs and Jerald Brainin, under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Kenneth C. Byrne and Sergio Bent, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

LILLIE, P. J.—By jury Miguel Guzman and Antonio Guzman were convicted of first degree burglary and grand theft of personal property. Appellant Miguel Guzman was also convicted of second degree robbery, and the court made a finding he had a prior felony conviction for which he had served a separate prison term. (Pen. Code, §§ 459, 487, subd. (a), 211, 667.5, subd. (b).) Appellant Miguel Guzman appeals from the judgment and contends he was improperly sentenced to concurrent terms for the burglary, grand theft and robbery in violation of Penal Code section 654. Appellant Antonio Guzman appeals from the judgment and contends the evidence was insufficient to support his convictions for burglary and grand theft.

## FACTS

Viewed in accordance with the usual rules on appeal (*People* v. *Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103]), the evidence established on November 7, 1994, Scott Hansen and his wife Jennifer and their son lived on Arcana Road in Woodland Hills. Scott Hansen was watching television that night at 8:20 p.m. The dog started barking. Hansen looked outside and saw four men and a boy standing fifteen feet below him.[1] The men were standing next to a white stake-bed truck which was backed into his driveway to his open garage door. In the bed of the truck was a $1,500 Yamaha motorcycle belonging to his son, which the family stored in the garage. Hansen yelled and the men looked up in his direction, quickly piled into the truck and drove off with the motorcycle.

---

[1]The Hansens had a split-level residence. The garage was open and located below the living room. Hansen observed the men taking the motorcycle from a balcony off the living room, which overlooked the garage and driveway.

Hansen's wife telephoned the police, and Hansen drove to the intersection of Canoga Avenue and Golondrina Street, which was along one of three routes out of Hansen's residential area. Hansen drove up Golondrina Street and encountered the burglars driving in the other direction. Hansen used his truck to wedge the white truck to a stop against the hillside. The driver of the white truck attempted to back up to leave, but could not budge. Hansen got out of his truck and yelled for the burglars to stop. The burglars got out of the white truck. Antonio Guzman stood on the hillside with the child. Miguel Guzman and another man "jumped" Hansen and beat him up and choked and kicked him. In the midst of the beating, Miguel Guzman left the fray and moved Hansen's truck out of their way. Miguel Guzman returned to Hansen, called Hansen a "M _____" and punched him several more times in the head. The burglars then drove off in the white truck.

After five seconds, Hansen got up off the ground and again drove after the burglars. A half-mile down Canoga Avenue, he caught up with the white truck. The burglars led Hansen on a high-speed chase in which Hansen was honking his horn and flashing his lights and the burglars drove through numerous stop signs and two red lights. Hansen eventually cornered the burglars at a dead-end street at the freeway and three of the men in the truck and the child ran off on foot. Antonio Guzman just stood there after the others ran off.[2]

The police had seen Hansen chasing the white truck at Winnetka Avenue and Ventura Boulevard and had followed him. Antonio Guzman was arrested.[3] Miguel Guzman fled under the freeway through a pedestrian tunnel. The area was cordoned off and Miguel Guzman was eventually arrested on the other side of the freeway. Hansen recovered his son's motorcycle from the bed of the white truck.

Defendants presented no evidence in defense.[4]

---

[2]Jennifer Hansen got in her car and followed her husband. She wrote down the white truck's license and telephoned the police from her car. She said "everyone was driving [in a] semi reckless [manner]."

[3]When the police arrived at the dead-end street, they told Antonio Guzman to "get down." Antonio Guzman just stood there as if dumbfounded. The officer who arrested Antonio Guzman testified he was staggering slightly and he was intoxicated, but he was not drunk.

[4]During the prosecutor's closing comments, the prosecutor asserted the burglary occurred when the men entered Hansen's garage; the grand theft occurred at the same time as the burglary; and the robbery occurred minutes later when Hansen caught up with the men on Golondrina Street.

The information also charged Antonio Guzman with robbery. The jury could not reach a verdict on that charge as to him. The court declared a mistrial and that count was dismissed.

## I.

### Sufficiency of the Evidence

■ The contention the evidence is insufficient to support Antonio Guzman's convictions as an aider and abettor for residential burglary and grand theft lacks merit. It amounts to no more than an invitation to this court to reweigh the evidence and substitute its judgment for that of the jury. That is not the function of an appellate court. (*People* v. *Culver* (1973) 10 Cal.3d 542, 548 [111 Cal.Rptr. 183, 516 P.2d 887].) Antonio Guzman was with Miguel Guzman and the others when they pulled up to a stranger's open garage in a hillside residential area and stole a motorcycle out of the garage. The burglars were aware of Hansen as they looked up when Hansen yelled and then piled into the white truck and drove off with the motorcycle. Antonio Guzman arrived with the burglars and stayed with them throughout the chase, even though he had the opportunity to stay behind when Hansen stopped the burglars on Golondrina Street and could have demanded they stop and let him out. He may well have stayed behind when the burglars were cornered near the freeway since he was too intoxicated or confused to flee with the others. Nevertheless, such evidence, along with the reasonable inferences raised from the testimony, is ample to support his convictions as an aider and abettor to burglary and the grand theft of personal property. (*People* v. *Campbell* (1994) 25 Cal.App.4th 402, 409 [30 Cal.Rptr.2d 525]; *In re Lynette G.* (1976) 54 Cal.App.3d 1087, 1094-1095 [126 Cal.Rptr. 898].)

## II.

### Penal Code Section 654

■ The contention the imposition of concurrent terms for all three offenses was a violation of Penal Code section 654 has merit.

At sentencing for Miguel Guzman, defense counsel argued ". . . the robbery and grand theft would be subject to 654 of the Penal Code, that they're all part of one transaction, . . . it would be improper for the court to sentence." The court interrupted defense counsel and said: "You don't have to argue any further. I would agree with you." The court listened to defense counsel's and the prosecutor's arguments as to whether the prison term imposed for the burglary should be a low term of three years or the middle term of four years. Neither party urged consecutive sentencing for the grand theft and robbery. The court then denied probation and imposed the middle term of four years for the burglary. The court imposed concurrent middle

terms for the robbery and the grand theft. The court imposed and stayed the one-year enhancement for the prior prison term.[5]

The court's comments indicate the court concluded Penal Code section 654 applied to both the grand theft and the robbery offenses. Hence, this appears to be another case in which a trial court made that common error of imposing concurrent terms, in lieu of staying the terms subject to Penal Code section 654 as is required by *People* v. *Miller* (1977) 18 Cal.3d 873, 886-887 [135 Cal.Rptr. 654, 558 P.2d 552].

▮ Whether the facts and circumstances reveal a single intent and objective within the meaning of Penal Code section 654 is generally a factual matter; the dimension and meaning of section 654 is a legal question. (*Neal* v. *State of California* (1960) 55 Cal.2d 11, 17 [9 Cal.Rptr. 607, 357 P.2d 839].) The prosecutor argued during his closing comments the grand theft and burglary occurred simultaneously. ▮ Miguel Guzman and his companions had not won their way to a place of temporary safety after the burglary when Hansen was beaten up when he attempted to thwart the burglars' escape. It was thus during the course of the ongoing burglary that Miguel Guzman used force on Hansen to retain the motorcycle. Such evidence supports a conclusion the burglary was still in progress when Miguel Guzman committed robbery and both offenses were committed pursuant to one objective and there was but a single continuous course of conduct. (*People* v. *Irvin* (1991) 230 Cal.App.3d 180, 184-185 [281 Cal.Rptr. 195]; *People* v. *Estes* (1983) 147 Cal.App.3d 23, 28 [194 Cal.Rptr. 909].) ▮ The grand theft is not a lesser included offense to burglary, but is a lesser included offense to robbery. (*People* v. *Cole* (1982) 31 Cal.3d 568, 582 [183 Cal.Rptr. 350, 645 P.2d 1182]; *People* v. *Irvin, supra,* 230 Cal.App.3d at pp. 184-186; *People* v. *Bernal* (1994) 22 Cal.App.4th 1455, 1458 [27 Cal.Rptr.2d 839].)[6] Accordingly, the conviction for grand theft must be reversed. (*Irvin, supra,* 230 Cal.App.3d at p. 186.) ▮ The burglary committed here was not a violent offense for purposes of the application of Penal Code section 654's ban on multiple punishment. (*People* v. *Miller, supra,* 18 Cal.3d at p. 886.) Thus, the concurrent terms for the burglary and robbery cannot be justified by the commission of two different offenses of violence on two different victims. The term for the robbery must be stayed. (See *People* v. *Miller, supra,* 18 Cal.3d at pp. 886-887.)

---

[5]At Antonio Guzman's sentencing proceedings, defense counsel objected the burglary and robbery were subject to Penal Code section 654. The court asked the prosecutor if he had any objection to staying the term imposed for robbery. The prosecutor said no. The court imposed a four-year middle term for the residential burglary and imposed and stayed the term for the robbery.

[6]The information charged Scott Hansen as the victim of both the burglary and grand theft. In charging the burglary, the information alleged appellant entered the residence "with the intent to commit larceny and any felony."

## DISPOSITION

The sentence imposed for Miguel Guzman's conviction for robbery in count 1 is stayed. Miguel Guzman's conviction for grand theft in count 3 is reversed and the trial court shall dismiss the charge of grand theft in count 3 upon the filing of the remittitur. In all other respects, the judgments are affirmed.

Johnson, J., concurred.

**WOODS (Fred), J.,** Concurring and Dissenting.—I dissent from the reversal of the grand theft count: grand theft (Pen. Code, § 487, subd. (a)) is *not* a lesser included offense of robbery. (Pen. Code, § 211.)

In *People* v. *Rush* (1993) 16 Cal.App.4th 20, 25 [20 Cal.Rptr.2d 15], *People* v. *Gamble* (1994) 22 Cal.App.4th 446 [27 Cal.Rptr.2d 451], and most recently in *People* v. *Escobar* (1996) 45 Cal.App.4th 477 [53 Cal.Rptr.2d 9], my colleagues held grand theft *auto* is an included offense of robbery. Now they hold grand theft (Pen. Code, § 487) also is an included offense of robbery. How they reach this conclusion is not explained. Only citations to *People* v. *Cole* (1982) 31 Cal.3d 568, 582 [183 Cal.Rptr. 350, 645 P.2d 1182], *People* v. *Irvin* (1991) 230 Cal.App.3d 180 [281 Cal.Rptr. 195], and *People* v. *Bernal* (1994) 22 Cal.App.4th 1455 [27 Cal.Rptr.2d 839] are provided as clues. Neither *Irvin* nor *Bernal* involved grand theft, which leaves *Cole*. As to *Cole*, it "relies on an attorney general concession, engages in no analysis, and cites only one case which does not support its conclusion." (*People* v. *Rush, supra,* 16 Cal.App.4th at p. 36 (dis. opn. of Woods (Fred), J.), fn. omitted.)

The majority position defies rational articulation. Until *Rush, Gamble,* and *Irvin* are disapproved by our California Supreme Court there will be "chaos in the trial courts and confusion in the appellate courts . . . ." (*People* v. *Rush, supra,* 16 Cal.App.4th at p. 37 (dis. opn. of Woods (Fred), J.); see *People* v. *Miranda* (1994) 21 Cal.App.4th 1464 [26 Cal.Rptr.2d 610].)

The petitions of both respondent and appellants for review by the Supreme Court were denied August 21, 1996. Chin, J., and Brown, J., were of the opinion that the petition of respondent should be granted.