[No. B115166. Second Dist., Div. Three. June 17, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTOINE MICHAEL LA STELLEY, Defendant and Appellant.

**[Opinion certified for partial publication.†]**

---

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions deleted are noted by the insertion of the following symbol of omission [[]].

**COUNSEL**

Mark Alan Hart for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Sanjay T. Kumar and David Andrew Eldridge, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ALDRICH, J.**—Appellant and defendant Antoine Michael La Stelley appeals from the judgment entered following his conviction of one count of

second degree robbery and one count of grand theft. (Pen. Code, § 211, 487, subd. (a).)

Appellant contends: (1) the record does not support the convictions; (2) there was only one crime and thus, he was improperly convicted of two separate crimes; and (3) with regard to the robbery conviction, the trial court prejudicially erred in failing to instruct on a lesser included theft offense.

In the published portion of this opinion (parts I, IIB., and III, *post*) we conclude appellant was improperly convicted of two crimes. In the unpublished portions of this opinion, we find appellant's other contentions unpersuasive.

We affirm in part and reverse in part.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *Facts.*

On September 15, 1996, appellant went to Fry's warehouse electronic store in Manhattan Beach. Two loss prevention agents (Walter Mira and Roger Bennett) noticed appellant. Over the next two and one-half hours, Mira and Bennett monitored appellant.

Fry's retail price for a DC-1 computer software kit was $349. The DC-20 software kit was a deluxe version of the DC-1 kit; the DC-20 sold for $829.99. Appellant opened several DC-1 boxes and a DC-20 box. Appellant placed items from the DC-20 kit into a DC-1 box, which he sealed with tape. He took that DC-1 box to a cashier and paid the price of a DC-1 kit; appellant walked with the box toward the store's exit.

Alethea Briggs was stationed at the exit. Her job was to ensure that sales receipts matched the items being taken out of the store. Mira told Briggs that he had been watching appellant and Briggs should ascertain whether everything in appellant's possession matched the sales receipt. When appellant

approached the exit, Briggs determined that the DC-1 box appellant was carrying contained DC-20 components. Briggs told appellant items in the box did not belong there; appellant said he had talked to a supervisor and everything was fine. Appellant stayed at the exit while Briggs took the box to Mira.

Mira examined the box and confirmed that it contained DC-20 items. To give appellant the "absolutely last benefit of the doubt," i.e., to allow appellant one final chance to either pay for or return the DC-20 equipment, Mira instructed Briggs to give the box back to appellant.

Briggs returned the box to appellant. Appellant took the box and ran to his car, which was parked in Fry's parking lot immediately adjacent to the store. Mira and Bennett approached. Mira showed appellant a badge, identified himself as a Fry's loss prevention agent, and said he needed to talk to appellant about unpaid merchandise.

Appellant turned to enter his car. Mira tried to place handcuffs on appellant's wrists. Appellant jerked his arm away and did a slashing motion towards Mira's throat. Appellant grabbed Mira's collar and in the process, scratched Mira, tore Mira's shirt, and broke Mira's necklaces. Appellant kicked and used profanity. Bennett recovered the merchandise.

Appellant entered his car. Mira grabbed appellant's car keys and with the assistance of two other store employees subdued appellant. Appellant was arrested thereafter.

B. *Procedure.*

Trial was by jury. Appellant was convicted of one count of second degree robbery (Pen. Code, § 211), and one count of grand theft (Pen. Code, § 487, subd. (a)). Imposition of sentence was suspended and appellant was placed on probation for five years on numerous conditions, including that he serve three hundred sixty-five days in county jail and pay a restitution fine of $500 (Gov. Code, § 13967, subd. (d)).

## II

### DISCUSSION

A. *The record supports the robbery theft conviction.**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

B. *Appellant was improperly convicted of two crimes, robbery and grand theft.*

██ Appellant was convicted of robbery of Mira and he was also convicted of grand theft from Fry's. Appellant contends he could not be convicted of two separate crimes. We find this contention persuasive.[5]

The recent case of *People* v. *Ortega* (1998) 19 Cal.4th 686 [80 Cal.Rptr.2d 489, 968 P.2d 48] and the case of *People* v. *Estes* (1983) 147 Cal.App.3d 23 [194 Cal.Rptr. 909] are instructive and resolve the issue.

In *Ortega,* the defendants forcibly stopped a van. They punched and clubbed the driver (Jose Rubio) and took his wallet and pager. Because the wallet contained no money, it was given back. The defendants also punched and kicked an occupant, Bernardo Leyva, and then pulled off Leyva's sweater. After Rubio and Leyva left the van, the defendants drove off with it. The defendants were found guilty on two counts of carjacking, two counts of second degree robbery, and one count of grand theft of a vehicle.

*Ortega* examined ". . . whether a defendant charged with carjacking, robbery, and theft, based upon the commission of a single act or course of conduct, may be convicted of multiple offenses." (*People* v. *Ortega, supra,* 19 Cal.4th at p. 689.) *Ortega's* analysis focused on whether or not the charges were necessarily included offenses, because " '. . . multiple convictions may *not* be based on necessarily included offenses. . . .' " (*Id.,* at p. 692, original italics, citations omitted.) Both degrees of theft (grand and petty) are necessarily included offenses of robbery. (*Id.,* at p. 694.) "[A] defendant may not be convicted of both robbery and grand theft based upon the same conduct. . . ." (*Id.,* at p. 699, citations omitted.) " 'When a defendant steals multiple items during the course of an indivisible transaction involving a single victim, he commits only one robbery or theft notwithstanding the number of items he steals.' [Citation.]" (*Ibid.*) Noting that

*See footnote, *ante,* page 1396.
[5]The issue is not whether or not appellant could be sentenced twice (Pen. Code, § 654).

personal property taken in the robbery of Rubio included the van, (*id.,* at p. 699), *Ortega* concluded the "defendants may not be convicted of both the robbery of Rubio, . . . and the theft of the van." (*Id.,* at p. 700.)[6]

In *People* v. *Estes, supra,* 147 Cal.App.3d 23, a Sears, Roebuck & Company department store security guard (Carl Tatem) observed the defendant as the defendant put on a coat and vest and then left the store without paying for the items. In the store parking lot, Tatem identified himself and confronted defendant about the two items. The defendant refused to accompany Tatem to the store and began to walk away. As Tatem began to detain the defendant, the defendant threatened Tatem with a knife. After a time, the defendant returned to the store, but denied using the knife and denied stealing the merchandise. The defendant was convicted of robbery and petty theft.

*Estes* first concluded that the victim of a robbery need not be the owner of the goods stolen. (147 Cal.App.3d at pp. 26-28.) *Estes* then noted that theft is a lesser included offense of robbery and thus the defendant could not be convicted of both offenses. The defendant had been convicted of ". . . both the robbery of the security guard, Tatem, and the petty theft from the Sears store. The theft of the property from Tatem was also a theft from the Sears store since Tatem, as Sears' agent, was in constructive possession of the merchandise. Therefore, the theft from the store was a lesser included offense to the robbery of Tatem." (*Id.,* at p. 29.) The petty theft conviction was reversed. (*Ibid.*)

Here, in an attempt to squeeze two crimes out of these events, the People charged appellant with grand theft from Fry's and robbery of Mira. However, in reality there was but one offense. Through Fry's employees, appellant tried to abscond with Fry's merchandise. Mira, a Fry's employee, was attacked by appellant when he tried to capture appellant and the stolen Fry's merchandise. Appellant had a single intent—he wished to steal merchandise from Fry's. He assaulted Mira, a Fry's employee, in the middle of an indivisible course of conduct. Appellant was still in the store's parking lot when he assaulted Mira.

The People argue two crimes were committed because there was a "pause" when the property was taken from appellant and thereafter returned to him.

---

[6]*Ortega* rejected the Court of Appeal's conclusion that the defendants could not be convicted of both carjacking and grand theft based upon the taking of the van. *Ortega* reached this result because "neither carjacking nor theft is a necessarily included offense of the other. . . ." (*People* v. *Ortega, supra,* 19 Cal.4th at p. 693.) With regard to whether defendants could be convicted of both robbery and carjacking, "[s]ubdivision (c) of section 215, . . . constitute[d] an expression of legislative intent permitting multiple convictions of carjacking and robbery based upon the same conduct. [Citations.]" (*Id.,* at p. 700.)

However, the employees of Fry's had been monitoring appellant throughout the entire series of events, as appellant tried to steal the same merchandise. This was but one more event occurring during that monitoring process. Appellant had not stopped his criminal activity and then begun a new and different criminal activity. Rather, all of appellant's actions were in his attempts to reach a place of safety with the stolen property.

Certainly if matters had not escalated, and appellant had simply given the box to Mira in the parking lot, the People would not suggest there were two separate thefts. We see no difference in the analysis simply because the events escalated from a theft to a robbery. (Cf. *People* v. *Guzman* (1996) 45 Cal.App.4th 1023, 1028 [53 Cal.Rptr.2d 67].)

Appellant was improperly convicted of both robbery and theft. The theft conviction must be reversed.

C. *With regard to the robbery conviction, the trial court did not err in failing to instruct with lesser included theft offense.*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

III

DISPOSITION

The conviction for grand theft (Pen. Code, § 487, subd. (a)) is reversed and the matter is remanded to provide the trial court with the opportunity to resentence. In all other respects, the judgment is affirmed.

Croskey, Acting P. J., and Petersen, J.,† concurred.

Appellant's petition for review by the Supreme Court was denied September 22, 1999.

---

\*See footnote, *ante*, page 1396.

†Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constition