Filed 5/2/13  P. v. Newman CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B239034 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. MA052946) |
| RONALD EVAN NEWMAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles A. Chung, Judge.  Affirmed but sentence modifications ordered.

Carla Castillo, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Peggy Z. Huang, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

Ronald Evan Newman (appellant) appeals from the judgment entered upon his convictions by jury of assault by means likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1), count 2),[1] burglary (§ 459, count 3), two counts of making criminal threats (§ 422, counts 4 and 5), and dissuading a witness from reporting a crime (§ 136.1, subd. (b)(1), count 6). Prior to trial, count 1 was dismissed pursuant to section 1382. The trial court sentenced appellant to two years in state prison, selecting the low term of two years for count 2. The court imposed concurrent terms of 16 months to two years on counts 3 through 6. Appellant contends the trial court erred by (1) not staying his sentence on count 3 under section 654 on the ground the burglary and assault were incident to the same intent and objective; and (2) not staying his sentence on count 5 under section 654 on the ground the criminal threat and witness dissuasion involved the same victim and were incident to the same objective.

The multiple victim exception to section 654 authorizes separate and concurrent sentences for the burglary and assault. We agree with appellant that the concurrent sentence for count 5 should have been stayed. We modify the judgment to correct the sentencing error and affirm the judgment as modified.

**FACTS**

*Prosecution Case*

On May 27, 2011, appellant and his fiancée, Michele Bowes, went to dinner at a local restaurant. During dinner, appellant talked about his mother and his grandmother but was not making "sense" to Bowes. Bowes decided to leave the restaurant and went outside. Appellant followed Bowes outside and walked toward her car. Bowes drove to her home in the City of Lancaster. She parked the car around the corner from her home instead of her driveway because she wanted appellant to think she was not home. Bowes entered her house and placed a table in front of the front door. She told her 14-year-old daughter K.B. to go into Bowes's bedroom with her and she then barricaded the bedroom door.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

Bowes and K.B. laid on the bed watching television. Approximately 30 minutes later Bowes heard appellant unlock the front door with his key. Appellant was unable to get in and went to the back door to gain entrance. Bowes told K.B. to send a text to appellant to tell him to go home. Appellant did not return the text, so K.B. called and told him to leave or she would call the police. Bowes heard footsteps coming up the stairs. Appellant pushed the bedroom door open and entered the room. He jumped onto the bed, straddled Bowes around the hip area, and restrained her by sitting on her. Bowes told appellant "Get off me. I can't breathe" after he placed his hands on her neck.

K.B. took her cell phone and went to another room from where she called the police. K.B. went back into the bedroom while talking to the 9-1-1 operator on the telephone. She told appellant, "Get away from me," "I'm on the phone with the cops right now," and "You better get off of her right now."[2] Appellant told K.B. there was "no need to call the police" and she should get off the phone because "he could kill [Bowes and K.B.] before the police would get here." K.B. told the 9-1-1 operator that she had to get off the telephone, and hung up. Bowes kept a golf club, a hammer, a paring knife, and pepper spray in her bedroom for her safety. K.B. struck appellant in the back with the golf club.

Los Angeles County Deputy Sheriffs Jeremy Esswein and Russell Deloof responded to the 9-1-1 call. When the deputies entered the bedroom they saw appellant lying on top of Bowes. Appellant had one arm around her throat area. Bowes told appellant to stop hurting her, and that she could not breathe. Deputy Esswein ordered appellant to get off Bowes and let her go. Appellant refused. Deputy Deloof tased appellant in the lower back when appellant continued to ignore Deputy Esswein's orders to release Bowes. Deputy Esswein was able to pull Bowes out of the bedroom when appellant rolled off Bowes. Deputy Deloof observed redness on Bowes's neck, a mark on her arm, and an injury to her elbow. Another deputy photographed her injuries.

_____

**2**    An audio recording and a transcript of the 9-1-1 call, containing these statements was admitted into evidence (People's exhs. 7 & 8).

*Defense Case*

No evidence was presented on behalf of the defense.

## DISCUSSSION

**I.**  **Appellant's Sentence for Burglary Did Not Violate Section 654**

Appellant contends the trial court violated the rule against multiple punishments when it sentenced him for both the burglary and the assault on Bowes. He asserts the sole objective of the burglary was to assault Bowes and he had already been punished for the assault. The People assert the sentence is proper because "'the limitations of section 654 do not apply to crimes of violence against multiple victims.'" (*People v. Oates* (2004) 32 Cal.4th 1048, 1063; accord, *People v. Felix* (2009) 172 Cal.App.4th 1618, 1630–1631 (*Felix*).)

We review the trial court's findings regarding the divisibility of a course of criminal conduct under the substantial evidence standard. (*People v. Osband* (1996) 13 Cal.4th 622, 730.) "The determination of whether there was more than one objective is a factual determination, which will not be reversed on appeal unless unsupported by the evidence presented at trial." (*People v. Saffle* (1992) 4 Cal.App.4th 434, 438.)

Section 654 prohibits separate punishment for multiple offenses arising from the same act or from a series of acts constituting an indivisible course of criminal conduct. (*People v. Rodriguez* (2009) 47 Cal.4th 501, 507.)[3] "'Whether *a course of criminal conduct* is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective* of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.'" (*Rodriguez, supra,* at p. 507.) Where the commission of one

---

[3]    Section 654, subdivision (a) provides:  "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.  An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

4

offense is merely "'a means toward the objective of the commission of the other,'" section 654 prohibits separate punishments for the two offenses. (*People v. Britt* (2004) 32 Cal.4th 944, 953.) Here, the burglary of Bowes's residence was the means of perpetrating the assault on her, and the criminal acts were indivisible and incident to appellant's single objective of attacking Bowes.

Ordinarily, section 654 would have barred punishment for both the burglary of Bowes's residence and the assault on Bowes but we find the multiple victims exception applies here because Bowes's 14-year-old daughter, K.B., was also present during the burglary even though she was not identified as a victim in the information or in the verdict.

Burglary "'standing alone, is not a violent crime for purposes of [applying] the multiple victim exception.'" (*People v. Hall* (2000) 83 Cal.App.4th 1084, 1090, quoting *People v. Centers* (1999) 73 Cal.App.4th 84, 99 (*Centers*).) Burglary qualifies as a crime of violence under the multiple victim exception to section 654, if the defendant "'inflicted great bodily injury in the commission of the burglary.'" (*People v. Le* (2006) 136 Cal.App.4th 925, 932, quoting *Centers, supra,* at p. 99.) Here, because the jury found appellant guilty of assault by means likely to produce great bodily injury within the meaning of section 245, subdivision (a)(1), appellant "'inflicted great bodily injury in the commission of the burglary'" and therefore the burglary of Bowes's residence was a violent offense for purposes of the multiple victim exception.

Although the information specified only Bowes as a victim of the crime of burglary, the manner in which a charge is pled in the information does not control the multiple victim exception to section 654. The importance of identifying a victim in the information, for purposes of the multiple victim exception to section 654, has been addressed in *Centers, supra,* 73 Cal.App.4th at page 101. In *Centers*, which was primarily a kidnapping case, one of three occupants of a residence was a victim of both a burglary and a kidnapping. The appellate court addressed whether the multiple victim exception to section 654 allowed a separate sentence for burglary even if the information did not name the victims of the burglary. (*Centers, supra,* at p. 99.) In concluding the

5

defendant could be sentenced for both the burglary and the kidnapping, the court reasoned the multiple victim exception applied, regardless of whether the identities of those victims had been pleaded, because there was substantial evidence that at least one other occupant was not also a victim of the kidnapping. (*Id.* at pp. 101–102.)

As in *Centers,* the trial court's implied finding in this case of multiple victims is supported by substantial evidence. Although K.B. was not a named victim of the burglary, she constituted a separate victim of this violent offense. She lived in the residence and was in close proximity to appellant's violent attack on her mother. Thus, the multiple victim exception to section 654 was triggered as there was one victim of the burglary, K.B., who was not also identified as a victim of the assault by means likely to produce great bodily injury.

Appellant concedes that the multiple victim exception to section 654 applies when a defendant inflicts great bodily injury but argues that there was no infliction of great bodily injury during the commission of the burglary. That is contrary to the evidence presented and the jury's findings. The evidence showed that appellant choked Bowes to the point where she complained that she could not breathe. The jury was instructed on the lesser included offense of simple assault (§ 240) but returned a verdict of guilty of assault by means likely to produce great bodily injury (§ 245, subd. (a)(1)).

The multiple victim exception applies "as long as each violent offense involves at least one different victim." (*Felix, supra,* 172 Cal.App.4th at p. 1631.) Here, each offense involved at least one separate victim because Bowes was a victim of the assault and K.B. was a victim of the burglary.

## II. Separate Sentences for Making a Criminal Threat and Dissuading a Witness Violated Section 654

The jury convicted appellant of making a criminal threat under section 422 in count 5, and dissuading K.B. from reporting a crime to law enforcement under section 136.1, subdivision (b)(1) in count 6. He contends his sentence on count 5 was unauthorized because "both counts involved the same act, the same victim and the same

6

objective—to scare K.B. so she would hang up the phone." The People argue section 654 was inapplicable because appellant's course of conduct can be broken down into separate incidents with separate objectives.

A criminal threat requires proof that, among other elements, the defendant intended the subject statement to be taken as a threat and the statement caused the victim reasonably to be in sustained fear for her own safety or the safety of her immediate family. (§ 422; *People v. Toledo* (2001) 26 Cal.4th 221, 227–228.) Felony dissuading a witness has different elements and requires a different intent. "Section 136.1 criminalizes trying to dissuade a victim from reporting a crime." (*People v. Upsher* (2007) 155 Cal.App.4th 1311, 1320.) Conviction of that felony offense requires the jury to find the defendant knowingly and maliciously tried to prevent or discourage a crime victim from making a report of that victimization to law enforcement. (§ 136.1; see *People v. Upsher, supra,* at pp. 1318–1319.)

Factually, the record indicates that all of the offenses occurred at the same location, and as part of the same confrontation. The witness dissuasion and criminal threat charges against appellant were incident to a single objective and were part of an indivisible transaction. Case law establishes that even when two offenses were committed by separate acts, section 654 precludes separate punishment when the sole purpose for committing one offense was to facilitate commission of the other. (See, e.g., *People v. Latimer* (1993) 5 Cal.4th 1203, 1216 [objective behind kidnapping was to facilitate rape].)

The People characterize the incident in the bedroom as having separate distinct acts and argue in addition to the objective of dissuading K.B. from reporting the crimes, the trial court could have found that appellant had a separate objective to kill K.B. when she was on the telephone with the 9-1-1 operator. But the trial court's implied finding that the threats created a new risk of harm and were independent of the attempts to dissuade K.B. from reporting the crimes is not supported by the evidence. (*People v. Felix* (2001) 92 Cal.App.4th 905, 915.)

7

The testimony of the victims and the transcript of the 9-1-1 call describing the circumstances of the threats supported the fact that appellant harbored a single intent—to get K.B. to hang up the telephone. K.B. testified that she went to the den and called the police when appellant forced his way into the bedroom. She returned to the bedroom and was talking to the 9-1-1 operator when appellant told her to get off the telephone because there was "no need to call the police" as he could kill both her and Bowes before the police would get there. The prosecutor asked K.B. how many times appellant made that statement. K.B. responded, "I don't remember. Maybe twice." On the 9-1-1 tape, K.B. told the operator "He's telling me to get off the phone," and "He said that if (unintelligible) don't get off the phone he's gonna kill her." Bowes testified that appellant told K.B. to "Hang up the phone. I could kill you guys by the time they get here."

Appellant did not threaten K.B. when he entered the bedroom prior to assaulting Bowes, nor did he threaten her subsequent to his arrest. His criminal threats to harm K.B. were inextricably linked to the fact that she was on the telephone and appellant was aware that she was talking to the police. Substantial evidence does not support a finding that appellant had a separate objective to kill K.B.

The People alternatively contend that appellant's acts were divisible in time and appellant had an opportunity to reflect and renew his intent before committing the separate crimes. However, intent, rather than the temporal proximity of the offenses, determines whether the transaction is indivisible. (*People v. Harrison* (1989) 48 Cal.3d 321, 335.) We reject the People's argument that a nine second pause on the 9-1-1 call was a sufficient separation in time. *People v. Guzman* (1996) 45 Cal.App.4th 1023, illustrates that section 654 applies even where crimes are committed in different locations and after a lapse of time. There, the defendant committed burglary by stealing a motorcycle from the victim's garage and loading it into a truck. The victim gave chase and cornered the defendant, who then exited the truck. The defendant committed a robbery when he beat the victim and drove away with the motorcycle. Division Seven of this district concluded that the burglary was still in progress when the defendant

8

committed the robbery. The court found that both offenses were committed pursuant to one objective, and there was but a single continuous course of conduct. (*People v. Guzman, supra,* at p. 1028.)

We conclude that the state of the evidence supports the conclusion that appellant's actions in criminally threatening K.B. and dissuading her from reporting the crimes to the police constituted one continuous course of conduct in pursuit of one objective.

## DISPOSITION

The judgment is ordered modified to reflect that the 16-month concurrent term for the criminal threat (§ 422) conviction on count 5, is stayed pursuant to section 654. As so modified, the judgment is affirmed. The trial court is ordered to send a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J. *

FERNS

We concur:

_____, Acting P. J.

ASHMANN-GERST

_____, J.

CHAVEZ

_____

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9