Filed 5/23/14  P. v. Gonzalez CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B248509 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA099051) |
| v. | |
| GEORGE A. GONZALEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mike Camacho, Judge. Affirmed as modified.

Heather E. Shallenberger, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Tannaz Kouhpainezhad, Deputy Attorney General, for Plaintiff and Respondent.

_____

The jury convicted defendant and appellant George A. Gonzalez in count 1 of first degree residential burglary (Pen. Code § 459),[1] in count 2 of second degree robbery (§ 211), and in count 3 of assault with a deadly weapon (§ 245, subd. (a)(1)). The jury found true the allegation that defendant personally used a deadly and dangerous weapon – a crowbar – as to count 2. Defendant admitted that he suffered two prior convictions within the meaning of section 1170, subdivision (h)(3); seven prior convictions within the meaning of section 1203, subdivision (e)(4); five prior prison terms within the meaning of section 667.5, subdivision (b); two prior convictions under the three strikes law within the meaning of sections 1170.12, subdivisions (a)-(d), and 667, subdivisions (b)-(i); and two prior convictions within the meaning of section 667, subdivision (a)(1).

The trial court sentenced defendant to 35 years-to-life, consisting of a term of 25 years-to-life in count 1, plus two 5 year enhancements pursuant to section 667, subdivision (a)(1); a concurrent sentence of 25 years-to-life in count 2; and a sentence of 25 years-to-life in count 3, stayed pursuant to section 654. Defendant's remaining prior convictions were stricken.

Defendant contends that the trial court abused its discretion in denying his motion to represent himself and in refusing to strike either of his two prior strike convictions. He further contends that his sentence in count 2 was unauthorized, and must be stayed.

We accept the Attorney General's concession that the sentence in count 2 must be stayed pursuant to section 654. We order the trial court to prepare an amended abstract of judgment staying the sentence in count 2 pursuant to section 654, and in all other respects, affirm.

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

## FACTS

**Prosecution**

On the evening of April 14, 2012, roommates Ryan Raskop and Fabian Rosales saw defendant exit their apartment as they were walking home. Defendant was carrying a crowbar and a laundry bag. As defendant walked by, Raskop and Rosales noticed that several items belonging to them and their roommates were inside the laundry bag, including two computers, a camera, and a jewelry box. They recognized the laundry bag as belonging to one of their roommates.

Raskop asked defendant where he got the items in the bag. Defendant answered that someone had given them to him, and walked away. Raskop and Rosales followed him. Raskop got close to defendant to take a photo of him, and defendant raised the crowbar over his head as if to swing it, and yelled, "Get away from me." He chased Raskop and Rosales for a few feet. Raskop was afraid of being hit with the crowbar, so he ran away from defendant. Then he and Rosales began following defendant again, in another attempt to take a photo of him. Defendant warned them to stay back because he had a gun, and walked towards the parking lot.

Kenneth Breaux, another resident of the apartment complex, saw Raskop chasing defendant. He heard Raskop yelling that defendant robbed his apartment. Breaux saw defendant running toward the parking lot very slowly, carrying something in his jacket, and watched him get into the passenger side of a car. Breaux took a picture of the license plate with his cell phone.

Raskop called 9-1-1. West Covina Police Officer Michael Harden responded to the scene, where Raskop and Breaux described defendant and the car, and provided the photos they had taken of defendant and the car's license plate. Officer Harden inspected the apartment and noticed that the sliding glass door in the kitchen appeared to have been pried open. Raskop, Breaux, and Rosales all identified defendant at trial.

**Defense**

Defendant testified that he was at the apartment complex on the day of the burglary to pick up a girl. His friend had driven him there. Defendant heard someone arguing, and then heard people screaming for help. He left due to the commotion. He never saw Raskop or Rosales, and did not have any weapons or a crowbar. He did not go into any of the apartments or encounter anyone at the apartment complex.

Defendant admitted that the cell phone photos taken by Raskop were probably him, though he could not remember what he was wearing that day. He recognized the car in the license plate photo as belonging to the friend who had driven him to the complex.

**Rebuttal**

West Covina Police Detective Bryan Gaboury testified that when he interviewed defendant, defendant did not mention going to the apartment complex to visit a girl or hearing an argument.

**DISCUSSION**

**Motion for Self-Representation**

Defendant first argues that the trial court abused its discretion in denying his motion to represent himself. We disagree.

On December 7, 2012, the day after trial was set to start, defendant made a motion under *People v. Marsden* (1970) 2 Cal.3d 118, to have counsel replaced with a newly appointed attorney. Defendant told the trial court [2] that counsel denied him access to police reports and continued defendant's trial despite stating he was ready to try the case. The trial court explained to defendant that police reports were not usually provided to defendants, and that the trial had been continued because defendant had not been present

---

[2] Judge Tia Fisher ruled on the *Marsden* motion and defendant's request for self-representation. Judge Mike Camacho presided over the trial.

on the previous three days and the prosecution had given defense counsel late discovery. Trial counsel would not be hampered at trial by not disclosing the police report or other materials to defendant. Defendant asserted that he was willing to waive time, if he could represent himself. The trial court questioned defendant why he wanted to represent himself when he had initially moved for a new attorney to be appointed. Defendant responded that he wanted to have access to all the evidence in the discovery package. The trial court explained to defendant that he would still not have access to all information if he represented himself. Defendant said that he could hire a private investigator to get all the evidence for him. The trial court explained that certain information could not be disclosed to defendants, and that whoever had advised him was incorrect. Defendant said he believed he could get the police report and other discovery documents through a different attorney. The trial court explained that defendant already had an outstanding and ethical lawyer. The trial court further advised defendant that because he had not waived time for trial, his request to represent himself was untimely. Given defendant's unfamiliarity with the law, the trial court did not believe that he would adequately defend himself. A continuance would be necessary whether or not defendant was represented by counsel. Defendant again requested to represent himself, stating he had been advised by an inmate in the law library. The trial court asked whether defendant would prefer legal advice from a prisoner or a lawyer. Defendant responded that he would prefer a lawyer. The trial court ruled:

"The stakes are high. And at the beginning of this you said the only reason you wanted to go pro per is you didn't think [defense counsel] was doing the job he should be. I already told you that he is. So we're not going to be – I'm not entertaining any pro per issues today. We are just not going there right now."

Defendant replied, "Okay."

A defendant who knowingly and intelligently waives the right to counsel has a constitutional right to conduct his own defense. (*Faretta v. California* (1975) 422 U.S. 806, 835-836; *People v. Lightsey* (2012) 54 Cal.4th 668, 694-695.) "A trial court must grant a defendant's request for self-representation if the defendant unequivocally asserts

that right *within a reasonable time prior to the commencement of trial*, and makes his request voluntarily, knowingly, and intelligently." (*People v. Lynch* (2010) 50 Cal.4th 693, 721 (*Lynch*), emphasis added, overruled on other grounds in *People v. McKinnon* (2011) 52 Cal.4th 610, 636-643.) We review the determination that the motion for self-representation was untimely under the deferential abuse of discretion standard. (*People v. Clark* (1992) 3 Cal.4th 41, 98.)

Whether a *Faretta* motion is timely depends on the totality of the circumstances at the time that the trial court was asked to rule. (*Lynch*, *supra*, 50 Cal.4th at p. 724.) "Thus, a trial court properly considers not only the time between the motion and the scheduled trial date, but also such factors as whether trial counsel is ready to proceed to trial, the number of witnesses and the reluctance or availability of crucial trial witnesses, the complexity of the case, any ongoing pretrial proceedings, and whether the defendant had earlier opportunities to assert his right of self-representation." (*Id*. at p. 726.)

When a defendant's *Faretta* motion "is . . . untimely, the grant or denial of that request is within the sound discretion of the trial court after it has inquired sua sponte into the specific factors underlying the request." (*People v. Wilkins* (1990) 225 Cal.App.3d 299, 303; *People v. Douglas* (1995) 36 Cal.App.4th 1681, 1688-1689.) When exercising its discretion, the trial court should consider "'the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion.'" (*People v. Burton* (1989) 48 Cal.3d 843, 853, quoting *People v. Windham* (1977) 19 Cal.3d 121, 128.)

Given the facts in the present case, defendant's opportunity to proceed pro se was not an unqualified right because of his delay in seeking to represent himself. Defendant waited until the day trial was to commence. (See *People v. Horton* (1995) 11 Cal.4th 1068, 1110 [motion made on the day trial was scheduled to start was untimely].) Additionally, the trial court properly took into account that counsel had been prepared to try the case, and would have if not for the prosecution's late discovery and defendant's failure to be present in court.

6

Moreover, the court did not abuse its discretion in denying the untimely request. The trial court evaluated defense counsel's performance and concluded that he provided excellent representation. The trial court also considered the reasons for defendant's request – that he had not been provided all discovery and that trial had been delayed – and found them inadequate to warrant self-representation. The trial was delayed for reasons outside of defense counsel's control, and would be delayed whether or not defendant represented himself. The discovery defendant requested would not normally be provided to a defendant. Trial counsel's choice not to disclose the evidence at issue was based on sound reasoning and would not hamper his defense. Finally, defendant's own unfamiliarity with the law would likely be detrimental to himself and the proceedings. No abuse of discretion occurred.

**Strike Convictions**

We reject defendant's contention that the trial court abused its discretion when it refused to dismiss a prior strike conviction pursuant to section 1385 and *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

Under section 1385, subdivision (a), the trial court has discretion to strike a prior felony conviction allegation in furtherance of justice. (*Romero*, *supra*, 13 Cal.4th at pp. 529-530.) To do so, the court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).) A trial court must enter a statement of reasons in the minutes of the court when dismissing a prior conviction; however, it is not required to "'explain its decision not to exercise its power to dismiss or strike.' [Citation.]" (*People v. Carmony* (2004) 33 Cal.4th 367, 376 (*Carmony*).)

7

This court reviews a ruling upon a motion to strike a prior felony conviction under a deferential abuse of discretion standard. (*Williams*, *supra*, 17 Cal.4th at p. 162.) "It is not enough to show that reasonable people might disagree about whether to strike one or more of [the defendant's] prior convictions." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310 (*Myers*).) The defendant bears the burden of establishing that the trial court's decision was unreasonable or arbitrary. (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977-978 [presumption that trial court acts to achieve lawful sentencing objectives].) "Where the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling . . . ." (*Myers*, *supra* at p. 310.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, *supra*, 33 Cal.4th at p. 377.)

Here, prior to hearing argument from both sides, the trial court stated the following:

"Before I can hear argument, I need for you to understand what is required for the court to look at in order to consider this motion. The court does have the authority to strike these priors absent abuse of discretion. But what I must consider is whether in light of the nature and circumstances of the present offense and your prior serious or violent felonies, which are those two prior residential burglaries, and particulars of your background, your character, and perhaps future prospects given all of these circumstances whether or not you would fall within the spirit of the strike law, meaning that they should be stricken, you should be punished accordingly or you fall outside the true spirit of the strike law, which really is intended to put an end to recidivism basically and not given a second chance, for example. So I have to look at those."

After hearing argument from both counsel, and having considered documents submitted by defendant regarding his prior employment, a completion notice of academic and rehabilitative training, and an acceptance letter into a residential educational treatment program, the trial court denied defendant's *Romero* motion, stating:

8

"The strike law came into play I believe in 1994 to, again, put an end to what we would otherwise describe or categorize as career criminal activity. You acquired your first strike, the residential burglary, shortly thereafter, 1995. That's when you acquired your first qualifying strike under that law. Evidently when you were convicted of your narcotic offense in 1997 or 1998, that strike came into play, and you were punished for it and received a state prison commitment. Hopefully it was tailored to, again, convince individuals in your situation that the law will not tolerate recidivism when you have acquired this type of history. And did it work on you? Unfortunately it did not.

"2002 you committed your second qualifying strike, another residential burglary. And the court came down on you as a second-strike offender fairly well and imposed up to a nine-year sentence which meant that you were incarcerated for most of that decade until being paroled recently and, again, designed to curb recidivism. Society will not tolerate further criminal conduct from people in your category. I wish it would have worked. But evidently it didn't.

"Now we have our present offense, another burglary. This one kind of escalated into violence, and that's why you are convicted of the robbery as well, evidently using some type of force to escape liability. And now obviously you stand convicted and come before the court saying, well, now is the time to give me a second chance and give me a chance at Delancey Street. Well you're kind of a day late and a dollar short, Mr. Gonzalez. I simply cannot do it. I think it would be an abuse of my discretion to strike your strikes in a case of this nature. And given the history that you have acquired throughout the years, there is just no end to it. I wish there was, but evidently it's time to punish accordingly. So I have to deny your motion, Mr. Gonzalez. I wish I could grant it, but, again, I think I would be abusing my discretion if I did on a case of this nature. So the *Romero* motion is denied, and the court must sentence accordingly."

In light of the relevant factors, including defendant's recidivism and the escalating nature of the offenses, the trial court's decision was not "so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, *supra*, 33 Cal.4th at p. 377.) It is difficult to imagine how the trial court could justify dismissing one or more strike prior

9

convictions in furtherance of justice under section 1385. The trial court did not abuse its discretion in denying defendant's *Romero* motion.

**Multiple Punishment**

The trial court imposed a term of 25 years-to-life in count 2 on the charge of second degree robbery, to run concurrently with the 25 years-to-life sentence imposed in count 1 on the first degree residential burglary charge, reasoning that the "offense occurred out of one continuous course of conduct." Defendant contends that imposition of a concurrent sentence in count 2 must be stayed pursuant to section 654's bar on multiple punishment. The Attorney General concedes the issue, and we agree with the parties.

Section 654, subdivision (a) provides, in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." "In *Neal v. State of California* (1960) 55 Cal.2d 11, this court construed the statute broadly: '"Section 654 has been applied not only where there was but one 'act' in the ordinary sense . . . but also where a course of conduct violated more than one statute and the problem was whether it comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654." [Citation.] [¶] Whether a *course of criminal conduct* is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective* of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' (*Id*. at p. 19, italics added.)" (*People v. Rodriguez* (2009) 47 Cal.4th 501, 507.)

On this record, defendant's offenses of burglary and robbery were both means of accomplishing the same objective of stealing the victims' personal belongings. (See *People v. Guzman* (1996) 45 Cal.App.4th 1023 [section 654 barred punishment for both burglary in which motorcycle was taken from garage and robbery in which force was

10

used against pursuing victim attempting to stop culprits]; *People v. Le* (2006) 136 Cal.App.4th 925 [section 654 barred punishment for both burglary in which goods were shoplifted from drugstore and force used against store employees attempting to prevent thieves from leaving with goods].) The trial court made no contrary findings, and, in fact, acknowledged that the offenses arose from one continuous course of conduct.

"It is well settled . . . that the court acts 'in excess of its jurisdiction' and imposes an 'unauthorized' sentence when it . . . fails to stay execution of a sentence under section 654." (*People v. Scott* (1994) 9 Cal.4th 331, 354, fn. 17), as the trial court did here. The judgment shall be modified to stay the sentence in count 2. (*Id.* at p. 354 [an unauthorized sentence is subject to correction when it comes to the attention of the reviewing court]; *People v. Ross* (1994) 28 Cal.App.4th 1151, 1160 [remand is not necessary where there is no need for the trial court to exercise discretion].)

## DISPOSITION

The trial court is directed to prepare a corrected abstract of judgment reflecting that defendant's sentence for second degree robbery in count 2 is stayed pursuant to section 654. The trial court shall forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.


KRIEGLER, J.


We concur:



TURNER, P.J.                                   MOSK, J.


11